IN THE MATTER OF: T.H.T.

No. COA07-122

(Filed 21 August 2007)

**1. Child Abuse and Neglect— findings of fact—clear and convincing evidence**

The trial court's conclusions that a child was abused and neglected by respondent mother were supported by findings of fact that were uncontested or supported by clear and convincing

IN RE T.H.T.

[185 N.C. App. 337 (2007)]

evidence where those findings established: (1) the child was seen at a hospital for various injuries, including a skull fracture; (2) a pediatrician concluded that the skull fracture was a depression fracture caused by nonaccidental means; (3) respondent mother's explanations were not consistent with the injuries observed; (4) the injuries occurred during a period of time while the child was in the physical custody of respondent mother; (5) the injuries were severe and obvious; and (6) respondent mother failed to obtain medical attention for the child.

**2. Child Abuse and Neglect— disposition—Chapter 50 custody—best interests of child**

The trial court did not err in a child abuse and neglect case by concluding that awarding custody of the minor child to her father was in the minor child's best interest, because: (1) the trial court found that the minor child's injuries were severe and obvious, and that respondent mother should have obtained medical attention but did not; (2) the trial court found that DSS's allegations of abuse and neglect relating to the father were not proven by clear and convincing evidence; (3) there was evidence from which the trial court could find that the injuries occurred while the minor child was in respondent mother's care and not in her father's care; and (4) the father testified in detail regarding his actions of calling the police and a magistrate, and taking the minor child to the hospital, after picking her up from her mother.

**3. Child Abuse and Neglect— Chapter 50 custody—findings of fact—sufficiency of evidence**

The trial court did not err in a child abuse and neglect case by decreeing that its order resolved any pending claim for custody even though respondent mother contends the trial court failed to make proper findings of fact and conclusions of law under N.C.G.S. § 7B-911, because: (1) the trial court's order contains findings of fact which are relevant to the issue of the minor child's best interest and welfare including her safety; (2) the trial court made the necessary conclusion that awarding custody to the minor child's father was in the best interest of the minor child; (3) the order contained findings which established that respondent mother failed to seek medical attention for the minor child's injuries, yet the father took appropriate action; and (4) the trial court made the required findings that no continued intervention was needed by the State and that the order be filed in the existing civil action relating to custody of the minor child.

IN THE COURT OF APPEALS 339

**IN RE T.H.T.**

[185 N.C. App. 337 (2007)]

**4. Child Abuse and Neglect— time delay—failure to hold hearing after delay—failure to show prejudice**

The trial court did not err in a child abuse and neglect case by failing to enter its adjudication and disposition within the thirty-day requirement and by failing to hold a subsequent hearing to determine and explain the reason for the delay as required by N.C.G.S. § 7B-807, because: (1) although there was a two-month delay, respondent mother was not prejudiced when her visitation rights were not affected nor was her right to appeal the order; and (2) although the trial court failed to conduct a hearing when the order was not entered within thirty days, the goal of a speedy resolution of cases involving juvenile custody would not be furthered by reversal where no prejudice was shown.

Judge TYSON dissenting.

Appeal by Respondent-Mother from order entered 3 November 2006 by Judge J. Henry Banks in Vance County District Court. Heard in the Court of Appeals 23 July 2007.

*No brief for Petitioner-Appellee Vance County Department of Social Services.*

*Wyrick, Robbins, Yates & Ponton L.L.P., by K. Edward Greene and Adrienne E. Allison, for Respondent-Appellant.*

McGEE, Judge.

K.T. (Respondent-Mother) and B.T. were married on 11 October 1999 and separated on 26 July 2005. A daughter, T.H.T., was born to the parties, and she was seven months old at the time of her injuries. Pursuant to an agreed upon custodial arrangement, B.T. and Respondent-Mother shared custody of T.H.T. Between 12 October 2005 and 16 October 2005, T.H.T. was in Respondent-Mother's custody. When Respondent-Mother returned T.H.T. to B.T. on 16 October 2005, B.T. noticed that T.H.T.'s face was bruised and her head was swollen. B.T. attempted to contact police and a magistrate. B.T. then took T.H.T. to Granville Medical Center. Granville Medical Center was concerned that T.H.T. had a small subdural hemorrhage and she was transferred to Duke University Hospital for further evaluation. One month later, on 14 November 2005, B.T. filed a civil action in Vance County District Court seeking child custody, child support, and attorney's fees.

IN RE T.H.T.

[185 N.C. App. 337 (2007)]

The Vance County Department of Social Services (DSS) filed a juvenile petition on 2 February 2006, alleging that T.H.T. was abused and neglected. The petition alleged (1) that during a scheduled visitation with Respondent-Mother, T.H.T. had sustained a traumatic head injury that required medical attention; (2) that T.H.T. suffered a "complex trauma, non-accidental closed head fracture" and had "facial swelling, a left neck bruise, and a bruised left arm"; and (3) that Respondent-Mother knew or had reason to know that T.H.T. was injured and failed to seek appropriate medical attention.

The trial court conducted a hearing on the petition on several different days between 5 April 2006 and 26 July 2006. Dr. Karen St. Claire (Dr. St. Claire), a pediatrician and Medical Director for the Inpatient and ER Child Abuse Consult Team, testified that T.H.T. was examined in the Duke University Hospital emergency room and was also examined by Dr. St. Claire. Dr. St. Claire and a radiologist determined that T.H.T. did not have a subdural hemorrhage, but that she did have a skull fracture and other bruising on her body. T.H.T. was admitted for further evaluation and remained at Duke for two days. When Dr. St. Claire spoke with B.T., he reported that he picked up T.H.T. from her great-grandmother's house and immediately saw a scratch over T.H.T.'s eyebrow, a bruise on her right forehead, swelling on the left side of her scalp, a red mark on her neck, and a bruise on her upper left arm.

Dr. St. Claire also spoke with Respondent-Mother. Respondent-Mother gave Dr. St. Claire several possible explanations for T.H.T.'s injuries, including (1) Respondent-Mother's toddler falling on T.H.T. or pulling a crib toy down onto T.H.T.; (2) T.H.T.'s great-grandmother holding T.H.T. by one arm; and (3) a "rough" child who stayed with T.H.T.'s great-grandmother when T.H.T. was also staying with her great-grandmother.

Dr. St. Claire was asked if she was able to determine when T.H.T.'s skull fracture had occurred. She responded that T.H.T. had swelling at the site of the fracture and that

swelling is something that can develop fairly quickly. It can develop over minutes or hours. In some cases over skull fractures, swelling may not be seen for a couple of days after a fracture, so to date it from the swelling is not possible. It could have been there . . . for a longer period of time but should have been noticed there for that period of time. The skull fracture itself by

its appearance on x-ray could not be dated. We can't date skull fractures from that.

Dr. St. Claire also testified that

my medical opinion is that this was non-accidental trauma, and that I had not heard a mechanism that could [cause] the fracture in particular, although some of the bruising may have been caused by things such as the child falling on another child but I would not see the skull fracture could have been caused in that regard.

B.T. testified that Respondent-Mother called him once on Saturday, 15 October 2005 and twice on Sunday, 16 October 2005, to tell him that T.H.T. had bruises on her face and to say that B.T. should not be "mad with [Respondent-Mother] . . . because [T.H.T.] had bruises on her face and [Respondent-Mother] didn't know what had happened." Respondent-Mother dropped T.H.T. off at her great-grandmother's house on Sunday, 16 October 2005. When B.T. picked T.H.T. up, he noticed that T.H.T. was "disoriented, real sleepy, [and] sluggish[.]" B.T. called the magistrate's office, the police department, and 911. B.T. then took T.H.T. to the Granville Medical Center. B.T. testified that based upon: (1) the phone calls he received from Respondent-Mother; (2) the information he obtained at the hospitals where T.H.T. was treated; (3) the information he received from DSS; and (4) Dr. St. Claire's testimony about the injuries, he believed that T.H.T.'s injuries occurred when T.H.T. was with Respondent-Mother.

Respondent-Mother also testified about the events leading to T.H.T.'s hospital stay. Respondent-Mother testified that she picked up T.H.T. from day care on Friday, 14 October 2005. On Saturday, 15 October 2005, Respondent-Mother, her toddler, and T.H.T. left Respondent-Mother's home in Henderson and traveled to Raleigh. She met her boyfriend, Brian Goddard (Goddard), for lunch. After lunch, they placed the children's car seats in Goddard's four-door truck. Goddard was in the process of moving, so they went to the house he was moving from so Goddard could move some boxes. While there, Respondent-Mother's toddler needed a diaper change, so Respondent-Mother took the toddler inside the house to change her, leaving T.H.T. in the truck. Respondent-Mother testified that when she returned, T.H.T. was crying. Respondent-Mother asked Goddard what had happened, and Goddard said he did not know. Respondent-Mother then took T.H.T. inside to change her diaper. Respondent-

IN RE T.H.T.

[185 N.C. App. 337 (2007)]

Mother called B.T. and left him a message. She then took T.H.T. and the toddler home. The following morning, Respondent-Mother discovered the toddler climbing into T.H.T.'s crib, noticed one of the crib toys had fallen down, and saw a bruise on T.H.T.'s face. Respondent-Mother testified that she immediately called B.T. to report the bruise. She dropped T.H.T. off with B.T.'s grandmother later that morning and called B.T. again to tell him about the bruises on T.H.T.'s face.

Respondent-Mother testified that she was not aware that T.H.T. was in the hospital until Monday, 17 October 2005, when an individual from DSS contacted her. Respondent-Mother called Goddard twice that night to find out whether he knew what could have happened to T.H.T. Respondent-Mother testified that she spoke with Goddard again on Tuesday, 18 October 2005, and Goddard admitted that a box containing dishes and glasses may have hit T.H.T. while she was in his truck. Respondent-Mother testified that when she received this information, she reported it to DSS.

Goddard testified that when Respondent-Mother was helping him move and the children were in his truck, he stacked sheets and pillows between the car seats. He then placed a box containing plates and glasses on top of the pile of sheets and pillows. He went back inside to bring out more boxes and found T.H.T. crying. He noticed that the box was no longer on top of the sheets, but was "in between the seat, in between the two kids, but it was kind of falling[.]" Goddard moved the box into the back of the truck. Goddard also testified that the children were never left alone because a friend of his named "Davey" was also present.

The trial court entered an order on 3 November 2006. Based upon numerous findings of fact, the trial court concluded (1) that T.H.T. was an abused juvenile in that Respondent-Mother created or allowed to be created a substantial risk of serious physical injury by other than accidental means; and (2) that T.H.T. was a neglected juvenile in that Respondent-Mother did not provide proper care or supervision. The trial court awarded legal and physical custody of T.H.T. to B.T., and awarded Respondent-Mother unsupervised visitation privileges. The trial court relieved DSS and the guardian ad litem of any further involvement in the case. The trial court also ordered that, pursuant to N.C. Gen. Stat. § 7B-911, its 3 November 2006 order would resolve any pending claim for custody, and upon entry of a civil order in the parties' existing civil action, the jurisdiction of the trial court would be terminated. Respondent-Mother appeals.

## I. Findings of Fact and Conclusions of Law

**[1]** Respondent-Mother first challenges the trial court's determination that T.H.T. was an abused and neglected juvenile. Respondent-Mother challenges several of the trial court's findings of fact and conclusions of law.

"The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2005). The role of this Court in reviewing a trial court's adjudication of neglect and abuse is to determine "(1) whether the findings of fact are supported by 'clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact[.]" *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citation omitted). If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary. *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003). "The trial [court] determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, [the trial court] alone determines which inferences to draw and which to reject." *In re Hughes*, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985).

Respondent-Mother challenges the following findings of fact made by the trial court:

7. That because [T.H.T.] at the time of [the] injuries was unable to crawl or walk, the injury "had to come by her" by at least two different means of contact according to Dr. St. Clair[e]'s testimony herein.

8. That the Court further finds based upon Dr. St. Clair[e]'s testimony that the two means of contact consisted of a forceful pressing or squeezing which caused the injury to [T.H.T.'s] arm and at least four or five forceful impacts to the skull with something hitting her or she hit something with fairly significant force.

9. That none of the several explanations of . . . Respondent-Mother . . . were consistent with the injuries observed.

10. The Court finds that between October 15, 2005 and October 16, 2005, while in the physical custody of [Respondent-Mother], [T.H.T.] suffered the aforementioned physical injuries by non-accidental means.

11. That [Respondent-Mother] at all relevant times herein failed to properly monitor and supervise [T.H.T.]; and that [Respondent-Mother] created or allowed to be created a substantial risk of serious physical injury.

Respondent-Mother argues, and we agree, that Dr. St. Claire's testimony referencing the "four or five impacts" referred to the number of impacts required to produce *all* of T.H.T.'s injuries, not just the skull fracture. Therefore, we find the portion of finding of fact 8 referencing "four or five forceful impacts to the skull" to be unsupported by clear and convincing evidence.

As to finding of fact 9, we conclude that the testimony of Dr. St. Claire provides clear and convincing evidence to support the trial court's finding. Dr. St. Claire testified that, in her medical opinion, the injuries sustained by T.H.T. were the result of non-accidental trauma, and that she had not heard an explanation that could have caused the skull fracture. We find this testimony adequately supports the finding.

We also conclude that finding of fact 10 was supported by clear and convincing evidence. In her argument, Respondent-Mother refers only to Dr. St. Claire's testimony regarding the timing of the injuries. Dr. St. Claire testified about the difficulty of determining exactly when the skull fracture had occurred, stating that she could not date the injury based upon observation of the swelling, or the x-ray taken. With regard to all the injuries, Dr. St. Claire stated that she could not date the injuries within a day, but that she could say the injuries occurred within "hours to a couple of days" of her examination.

First, we note that Dr. St. Claire's testimony did not state that T.H.T.'s injuries could not have occurred during 15-16 October 2005 and, therefore, her testimony could provide some support for a finding that the injuries occurred during that time frame. We also note that the testimony of a number of the other witnesses' focused on when the injuries could have occurred. B.T. testified that Respondent-Mother called him on Sunday, 16 October 2005, and said that T.H.T. had bruises on her face. B.T. also testified that he observed the bruises when he picked up T.H.T. from his grandmother's house, where Respondent-Mother had dropped off T.H.T. Further, Goddard testified that he was with Respondent-Mother and T.H.T. on Saturday, 15 October 2005 and that he believed a box in his truck could have fallen onto T.H.T. while she was in the back seat. Therefore, we conclude that the trial court's finding as to the timing of T.H.T.'s injuries was supported by clear and convincing evidence.

IN RE T.H.T.

[185 N.C. App. 337 (2007)]

Respondent-Mother also challenges finding of fact 11. Respondent-Mother states that the second part of the finding is actually more properly treated as a conclusion of law, and that the finding that Respondent-Mother failed to properly monitor and supervise T.H.T. was not supported. We agree with Respondent-Mother that the trial court improperly included a conclusion of law in this finding of fact when it stated that "Respondent-Mother created or allowed to be created a substantial risk of serious physical injury." Therefore, we consider that language with the challenged conclusions of law. However, we disagree with Respondent-Mother that the remainder of finding of fact 11 was unsupported by clear and convincing evidence. Although Respondent-Mother and Goddard stated at times during their testimony that T.H.T. was not left alone, other parts of their testimony do not support that assertion. Respondent-Mother testified that she was inside using the restroom while changing her older daughter's diaper during the time T.H.T. was in Goddard's truck. Goddard testified that during this time he was bringing boxes from his house to his truck. Further, this occurred around the time when the box of dishes and glasses was stacked upon the sheets and pillows next to T.H.T.'s car seat. We find this evidence sufficient to support the trial court's finding that Respondent-Mother failed to properly monitor and supervise T.H.T.

We find the language of finding of fact 7 to be unclear. However, even if we assume *arguendo* that this finding is unsupported by clear and convincing evidence, we conclude that the findings affirmed above, along with the unchallenged findings, support the trial court's conclusions that T.H.T. was abused and neglected.

N.C. Gen. Stat. § 7B-101(15) (2005) includes in its definition of a neglected juvenile, "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker[.]" N.C. Gen. Stat. § 7B-101(1) (2005) defines an abused juvenile as, *inter alia*, a juvenile whose parent "creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[.]" The uncontested findings of fact, together with the findings affirmed above, establish, *inter alia*, (1) that T.H.T. was seen at Duke University Hospital for a scratch and bruise above her right eye, some left-sided facial swelling, a left neck bruise, a left arm bruise, mild diaper rash from previous diarrhea, and a left parietal skull fracture; (2) that Dr. St. Claire concluded that the skull fracture was a depression fracture caused by non-accidental means; (3) that Respondent-Mother's

explanations were not consistent with the injuries observed; (4) that the injuries occurred between 15-16 October 2005, while T.H.T. was in the physical custody of Respondent-Mother; (5) that the injuries were severe and obvious; and (6) that Respondent-Mother failed to obtain medical attention for T.H.T. These findings support the trial court's conclusions of law (1) that T.H.T. was an abused juvenile in that Respondent-Mother created or allowed to be created a substantial risk of serious physical injury to T.H.T. by other than accidental means; and (2) that T.H.T. was a neglected juvenile in that T.H.T. did not receive proper care or supervision from Respondent-Mother.

## II. Disposition Issues

[2] Respondent-Mother next contends that the trial court erred by concluding that awarding custody of T.H.T. to B.T. was in T.H.T.'s best interest. Specifically, Respondent-Mother contends that the findings of fact pertaining to B.T. were unsupported by clear and convincing evidence and therefore could not support the trial court's conclusion regarding T.H.T.'s best interest. We disagree.

At a dispositional hearing, the trial court must consider the best interests of the child. *In re O.W.*, 164 N.C. App. 699, 701, 596 S.E.2d 851, 853 (2004). The trial court's decision is discretionary. *Id.*

In the present case, the trial court found that T.H.T.'s injuries were severe and obvious, and that Respondent-Mother should have obtained medical attention but did not. This finding was not challenged by Respondent-Mother. The trial court also concluded that allegations of abuse and neglect made by DSS as they related to B.T. were not proven by clear and convincing evidence. As a result, the trial court dismissed any claim relating to B.T.

Further, the trial court made the following findings of fact relevant to B.T.:

4. That on or about October 16, 2005, [B.T.] sought medical treatment for [T.H.T.] due to physical injuries about [T.H.T.'s] head and body areas.

. . .

13. That [B.T.] at all relevant times herein took appropriate and prompt action to seek necessary medical attention for [T.H.T.] and to protect [T.H.T.] from further injury.

14. That [B.T.] was in no way responsible for the injuries sustained by [T.H.T.]

We conclude that these findings were supported by clear and convincing evidence. Respondent-Mother argues that the findings were not supported because (1) B.T. called police and a magistrate before taking T.H.T. to the hospital; and (2) Dr. St. Claire's testimony as to when the injuries to T.H.T. occurred allowed for the possibility that the injuries were sustained while T.H.T. was in B.T.'s custody. We note, as Respondent-Mother acknowledges, that findings may be sustained where the evidence would support a contrary finding. *McCabe*, 157 N.C. App. at 679, 580 S.E.2d at 73. Further, for the same reasons we stated in upholding the trial court's finding that the injuries occurred on 15-16 October 2005, while T.H.T. was in Respondent-Mother's custody, we uphold finding of fact 14. There was evidence from which the trial court could find that the injuries occurred while T.H.T. was in Respondent-Mother's care, and not in B.T.'s care. B.T. also testified in detail regarding his actions after picking up T.H.T., and we find this testimony sufficient to support finding of fact 13. We also conclude that these findings were sufficient to support the trial court's conclusion that custody with B.T. was in T.H.T.'s best interest. Therefore, we overrule Respondent-Mother's assignments of error relating to the trial court's disposition.

### III. N.C. Gen. Stat. § 7B-911

[3] Respondent-Mother next argues that the trial court erred by decreeing that its order resolved any pending claim for custody because the trial court failed to make proper findings of fact and conclusions of law pursuant to N.C. Gen. Stat. § 7B-911. Specifically, Respondent-Mother argues that the trial court's findings of fact and conclusions of law were insufficient to satisfy the requirements of a custody order under Chapter 50, and therefore, the trial court's order did not comply with N.C. Gen. Stat. § 7B-911.

N.C. Gen. Stat. § 7B-911(c) (2005) provides, in part:

The court may enter a civil custody order under this section and terminate the court's jurisdiction in the juvenile proceeding only if:

(1) In the civil custody order the court makes findings and conclusions that support the entry of a custody order in an action under Chapter 50 of the General Statutes or, if the juvenile is

already the subject of a custody order entered pursuant to Chapter 50, makes findings and conclusions that support modification of that order pursuant to G.S. 50-13.7[.]

N.C. Gen. Stat. § 50-13.2(a) (2005) provides, in part:

An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. In making the determination, the court shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party and shall make findings accordingly. An order for custody must include findings of fact which support the determination of what is in the best interest of the child[.]

"The judgment of the trial court should contain findings of fact which sustain the conclusion of law that custody of the child is awarded to the person who will best promote the interest and welfare of the child." *Green v. Green*, 54 N.C. App. 571, 572, 284 S.E.2d 171, 173 (1981). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978).

As noted above, the trial court's order contains findings of fact which are relevant to the issue of T.H.T.'s best interest and welfare, that is, T.H.T.'s safety. Further, the trial court made the necessary conclusion that awarding custody to B.T. was in the best interest of T.H.T. The order contains findings which establish that Respondent-Mother failed to seek medical attention for T.H.T.'s injuries, yet B.T. took appropriate action. The trial court also made the required findings (1) that no continued intervention was needed by the State; and (2) that the order be filed in the existing civil action relating to custody of T.H.T. We do not believe, as Respondent-Mother urges, that the above findings are "mere conclusory statements that the party being awarded custody is a fit and proper person to have custody and that it will be in the best interest of the child to award custody to that person," *Dixon v. Dixon*, 67 N.C. App. 73, 77, 312 S.E.2d 669, 672 (1984). Rather, we conclude the trial court made sufficient findings pursuant to N.C. Gen. Stat. § 7B-911(c).

IV. N.C. Gen. Stat. § 7B-807

[4] Respondent-Mother makes two arguments relating to N.C. Gen. Stat. § 7B-807. Respondent-Mother argues that the trial court erred (1) in not entering its adjudication and disposition order within the thirty-day requirement; and (2) in not holding a subsequent hearing to determine and explain the reason for the delay.

A. Delay in Entry of Adjudication Order

Respondent-Mother asserts that the trial court erred by failing to enter the adjudication and disposition order within the time required by N.C. Gen. Stat. § 7B-807. Respondent-Mother further asserts that she was prejudiced by the delay, and we must therefore reverse the order. We do not agree.

N.C. Gen. Stat. § 7B-807(b) (2005) provides that an adjudicatory order "shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing." N.C. Gen. Stat. § 7B-905(a) (2005) imposes an identical thirty-day deadline for the entry of a disposition order. When a trial court fails to meet this mandate, our Court has held that the error does not establish a ground for reversal absent a showing of prejudice. *In re E.N.S.*, 164 N.C. App. 146, 153-54, 595 S.E.2d 167, 171-72, *disc. review denied*, 359 N.C. 189, 606 S.E.2d 903 (2004). We stated:

> While we have located no clear reasoning for [the addition of the thirty-day deadline], logic and common sense lead us to the conclusion that the General Assembly's intent was to provide parties with a speedy resolution of cases where juvenile custody is at issue. Therefore, holding that the adjudication and disposition orders should be reversed simply because they were untimely filed would only aid in further delaying a determination regarding [a child's] custody because juvenile petitions would have to be re-filed and new hearings conducted.

*Id.* at 153, 595 S.E.2d at 172. We determined that no prejudice resulted from the late entry of the order in *E.N.S.* because the record demonstrated that the "respondent's right to visitation with [the child] was not affected by the untimely filings nor was her right to appeal the orders." *Id.* at 154, 595 S.E.2d at 172.

In the present case, the adjudication and disposition hearing was concluded on 26 July 2006. The adjudication order was entered on 3 November 2006, over two months after the order should have been

entered. However, like in *E.N.S.*, Respondent-Mother's visitation with T.H.T. was not affected, nor was her right to appeal the order. For reasons similar to those stated in *E.N.S.*, we conclude that Respondent-Mother was not prejudiced by the untimely filing of the order.

B. Hearing Requirement of N.C. Gen. Stat. § 7B-807(b)

Respondent-Mother's final argument relates to the General Assembly's 2005 amendment of N.C. Gen. Stat. § 7B-807(b). In Session Law 2005-398, the General Assembly added the following language to N.C.G.S. § 7B-807(b):

> If the order is not entered within 30 days following completion of the hearing, the clerk of court for juvenile matters shall schedule a subsequent hearing at the first session of court scheduled for the hearing of juvenile matters following the 30-day period to determine and explain the reason for the delay and to obtain any needed clarification as to the contents of the order. The order shall be entered within 10 days of the subsequent hearing required by this section.

The relevant portion of the title of the act was "An Act to Amend the Juvenile Code to Expedite Outcomes for Children and Families Involved In Welfare Cases[.]" The General Assembly added identical language to N.C. Gen. Stat. § 7B-907(c), pertaining to permanency planning hearings, and N.C. Gen. Stat. § 7B-1110(a), pertaining to orders terminating parental rights.

Respondent-Mother argues that the order of the trial court must be reversed because no hearing was held when the order was not entered within thirty days. We hold that it was error not to conduct the hearing required by N.C.G.S. § 7B-807(b) when the order was not entered within thirty days. Although we do not condone this failure to comply with the statutory mandate of N.C.G.S. § 7B-807(b), we believe that by enacting this requirement, like the time requirements found throughout Chapter 7B, the General Assembly intended "to provide parties with a speedy resolution of cases where juvenile custody is at issue." *E.N.S.*, 164 N.C. App. at 153, 595 S.E.2d at 172. Based upon this goal, absent a showing of prejudice, our Court has refused to reverse untimely but otherwise proper orders. *See In re As.L.G. & Au.R.G.*, 173 N.C. App. 551, 619 S.E.2d 561 (2005), *disc. review improvidently allowed*, 360 N.C. 476, 628 S.E.2d 760 (2006) (discussing numerous cases from our Court applying the prejudice requirement in juvenile cases where statutory deadlines were not fol-

**IN RE T.H.T.**

[185 N.C. App. 337 (2007)]

lowed). We find the same rationale applies to the hearing requirement added to N.C. Gen. Stat. § 7B-807(b) and believe that the goal of a speedy resolution of cases involving juvenile custody would not be furthered by reversal where no prejudice is shown.

Our cases have applied the prejudice requirement outside the context of adjudication and disposition orders affecting custody. This Court has also held that when a trial court fails to timely enter an order terminating a parent's rights, that error may be harmless absent a showing of prejudice. *In re J.L.K.*, 165 N.C. App. 311, 316, 598 S.E.2d 387, 391 (2004). We have also required a showing of prejudice when the statutory time requirement applicable to the filing of petitions seeking termination of a parent's rights is violated. *In re B.M., M.M., An.M., & Al.M.*, 168 N.C. App. 350, 354-55, 607 S.E.2d 698, 701 (2005). Further, this Court has conducted a prejudice analysis in other contexts in the juvenile setting. *See, e.g., In re M.G.T.-B.*, 177 N.C. App. 771, 775, 629 S.E.2d 916, 919 (2006) (holding that even if inadmissible hearsay was improperly admitted, the error must be prejudicial to require reversal); *In re Clark*, 159 N.C. App. 75, 80, 582 S.E.2d 657, 600 (2003) (applying a prejudice requirement to an error under N.C. Gen. Stat. § 7B-806 requiring electronic or mechanical recording of all adjudicatory and dispositional hearings); *In re Joseph Children*, 122 N.C. App. 468, 471-72, 470 S.E.2d 539, 541 (1996) (finding that although a statute governing notice and service by publication was violated, reversal was not warranted where there was no prejudice to the respondent). For these reasons, we conclude that applying a prejudice analysis to this error is appropriate.

In the present case, Respondent-Mother has not shown, nor do we find, that she was prejudiced by the trial court's failure to hold the hearing required by N.C.G.S. § 7B-807(b). Therefore, we do not reverse on this basis.

Affirmed.

Judge ELMORE concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge dissenting.

The majority's opinion erroneously affirms the trial court's order that adjudicated T.H.T. an abused and neglected juvenile and awarded

**IN RE T.H.T.**

[185 N.C. App. 337 (2007)]

custody of T.H.T. to her father. I vote to reverse the trial court's order pursuant to N.C. Gen. Stat. § 7B-807(b). The adjudication order was not entered within thirty days to respondent-mother's extreme prejudice and no statutorily mandated hearing was held to explain any purported reason for the delay or to expedite entry of the order. Petitioner fails to argue any basis to explain why the order was entered late or to show the reason for the failure to hold the hearing. I respectfully dissent.

### I.   Late Entry of Order

Respondent-mother argues the adjudication order should be reversed because she was prejudiced by the late entry of the order. I agree.

N.C. Gen. Stat. § 7B-807(b) (2005) states an adjudication order "*shall* be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing." (Emphasis supplied). Here, the adjudicatory hearing commenced on 5 April 2006 and concluded on 26 July 2006 over three and one-half months later. At the conclusion of the hearing, the trial court ordered DSS "to draw up the Order with the appropriate findings." DSS failed to comply with the court's order. The adjudicatory order was not filed until 3 November 2006, more than thirteen weeks after the completion of the last hearing in July, and six months after the hearing commenced.

The majority's opinion concedes the entry of the adjudication order was late and violates the statute, but holds respondent-mother was not prejudiced because neither her visitation with T.H.T. was affected, nor was she delayed in her right to appeal the order. I disagree.

The order established legal and physical custody of T.H.T. with her father and orally disposed of the pending custody action. Respondent-mother argues she was prejudiced by DSS and the unexplained delays in entering the order in violation of N.C. Gen. Stat. § 7B-807(b). Respondent-mother asserts "the delay prejudiced [her] ability to move forward with a motion to modify, or seek other relief in, the civil custody case until [after] entry of the order" and she was prejudiced because she could not appeal the trial court's order. I agree.

"[A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen. Stat. § 1A-1, Rule 58 (2005). "The announcement of judgment in open court is the mere rendering of judgment, not the entry of judgment. The

**IN RE T.H.T.**

[185 N.C. App. 337 (2007)]

entry of judgment is the event which vests this Court with jurisdiction." *In re Pittman*, 151 N.C. App. 112, 114, 564 S.E.2d 899, 900 (2002) (citation omitted); *see In re Bullabough*, 89 N.C. App. 171, 180, 365 S.E.2d 642, 647 (1988) (The trial court may make an oral entry of a juvenile order provided the order is subsequently reduced to written form.).

Until the order was reduced to writing, filed, and entered, respondent-mother could neither seek to modify custody nor appeal from the oral rendition. Respondent-mother, T.H.T., and all other parties are prejudiced by DSS's repeated and extraordinary delays in the initiation, resolution, and disposition of this matter. The trial court and DSS's unexplained and repeated failures to comply with the statutory time limits "defeats the purpose of the time requirements specified in the statute, which is to provide [all] parties with a speedy resolution of cases where juvenile custody is at issue" and prejudiced both respondent-mother and T.H.T. *In re B.M., M.M., An.M., & Al.M.*, 168 N.C. App. 350, 355, 607 S.E.2d 698, 702 (2005).

Prejudice is also shown because the "appellate process was put on hold[] [and] any sense of closure for the children, respondent, or the children's current care givers was out of reach . . . ." *In re C.J.B. & M.G.B.*, 171 N.C. App. 132, 135, 614 S.E.2d 368, 370 (2005). Respondent-mother, T.H.T., and T.H.T.'s care-givers suffered delays, and respondent-mother has alleged and shown prejudice resulting from the trial court and DSS's failure to comply with the statutory mandated maximum time limits in N.C. Gen. Stat. § 7B-807(b). I vote to reverse the trial court's order.

## II. No Subsequent Hearing

Respondent-mother also argues the adjudication order should be reversed because no subsequent hearing was held "to determine and explain the reasons for the delay" as required by N.C. Gen. Stat. § 7B-807(b). As a conjunctive reason or as an alternative basis to respondent-mother's argument above, the order should be reversed.

N.C. Gen. Stat. § 7B-807(b) was amended in 2005 and mandates:

If the order is not entered within 30 days following completion of the hearing, the clerk of court for juvenile matters *shall schedule a subsequent hearing* at the first session of court scheduled for the hearing of juvenile matters following the 30-day period *to determine and explain the reason for the delay* and to obtain any needed clarification as to the contents of the order.

(Emphasis supplied). This amendment unambiguously shows the General Assembly's obvious and continuing concern with and its intent: (1) to further mandate a halt to the long delays in entry of orders after the conclusion of hearings; (2) to remove procrastination and inaction from DSS's trial and post-trial tactics; and (3) to further the juvenile code's stated purpose to timely resolve the issues that lead to the removal of the child and "for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents." N.C. Gen. Stat. § 7B-100(4) (2005); see Adams v. Tessener, 354 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) ("[A] parent enjoys a fundamental right to make decisions concerning the care, custody, and control of his or her children under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (internal quotation omitted)). Here, the record fails to show the statutorily required hearing was conducted after the thirty days elapsed from the prior hearing and why the order was not entered earlier.

The majority's opinion again properly concludes the trial court erred by failing to conduct the hearing as is statutorily required by N.C. Gen. Stat. § 7B-807(b), but concludes respondent-mother must show further prejudice to justify reversal on this ground. The statute clearly places the mandate and burden on "the clerk of court . . . *shall* schedule a subsequent hearing" and places no burden on respondent-mother to prove any prejudice. N.C. Gen. Stat. § 7B-807(b) (emphasis supplied). Prejudice to respondent-mother had already occurred because the order was not timely entered as required by the statute in order to trigger this provision.

The majority's opinion erroneously relies on *In re E.N.S.*, 164 N.C. App. 146, 595 S.E.2d 167, *disc. rev. denied*, 359 N.C. 189, 606 S.E.2d 903 (2004), to conclude absent a showing of prejudice the trial court's failure to hold the hearing as is required by N.C. Gen. Stat. § 7B-807(b) does not require reversal of the order. The majority's opinion concludes the goal of a speedy resolution of juvenile custody cases would not be furthered by reversal where no prejudice is shown. *In re E.N.S.*, 164 N.C. App. at 153, 595 S.E.2d at 172. I disagree. The requirement to hold the subsequent hearing does not arise until after the trial court has violated the thirty day mandate for entering the order.

*In re E.N.S.* was decided in 2004 and involved the late entry of an adjudication order pursuant to N.C. Gen. Stat. § 7B-807(b) and *not* the

**IN RE T.H.T.**

[185 N.C. App. 337 (2007)]

failure to hold the required hearing. 164 N.C. App. at 153, 595 S.E.2d at 172. N.C. Gen. Stat. § 7B-807(b) was amended in 2005, after *In re E.N.S.* was decided, to include the additional mandatory language to require a subsequent hearing, if the order was not entered within thirty days post hearing.

The amendment was enacted and amended the juvenile code to require expedited outcomes for children and their families involved in juvenile cases and appeals. The General Assembly clearly intended to restore the effectiveness of the statutory time lines in juvenile cases by mandating an additional hearing to be held "to determine and explain the reason[s]" for non-entry of an order within the statutory deadlines. N.C. Gen. Stat. § 7B-807(b).

No burden is placed on the respondent to demonstrate further prejudice. Prejudice is already shown by the trial court's failure to enter these orders within thirty days after the hearing as is previously mandated. This provision only arises after previous failures to comply with the statute. Here, thirteen weeks elapsed after the hearing concluded and six months had passed after hearings commenced before the order was entered. The trial court's failure to hold the additional hearing is error requiring reversal. To hold otherwise would recognize the respondent-mother's statutory right to the hearing, yet provide no remedy for its violation.

Even if a further showing of prejudice is required, respondent-mother has clearly shown prejudice. The trial court's failure to hold the hearing deprived respondent-mother from requiring the trial court "to determine and explain the reason[s] for the delay" or "to obtain any needed clarification . . . ." N.C. Gen. Stat. § 7B-807(b). The statute mandates the order to be entered within thirty days after the hearing. *Id.* This additional information "to determine and explain the reason" may have aided respondent-mother in her appeal to this Court. *Id.* Even though no showing of prejudice is required, and the clerk carries the statutory burden and mandate to "schedule a subsequent hearing at the first session of court . . . following the 30-day period." Respondent-mother has clearly demonstrated the prejudice she suffered by the trial court's failure to hold the hearing required by N.C. Gen. Stat. § 7B-807(b) by suffering even further delays, longer separation from her child, and her inability to appeal until the order was entered. *Id.* Concurrently with the reasons above, or alternatively on this ground alone, I vote to reverse the trial court's order.

N.C. INDUS. CAPITAL, LLC v. CLAYTON

[185 N.C. App. 356 (2007)]

## III. Conclusion

The trial court's order adjudicating T.H.T. as an abused and neglected juvenile and awarding custody to her father should be reversed pursuant to N.C. Gen. Stat. § 7B-807. The adjudication order was not entered within the statutorily mandated thirty days after the hearing. Respondent-mother was prejudiced by delays exceeding six months from when the hearing commenced and over thirteen weeks after conclusion of the hearing before the order was entered.

No statutory mandated hearing was scheduled and held after the original thirty days mandate was violated to "determine and explain" any purported reasons for the delays or "obtain any needed clarification . . . ." *Id.* DSS failed to file a response to respondent-mother's arguments of prejudice on appeal to this Court, offers no excuse for, and makes no attempt to "explain the reason[s] for the delay . . . ." *Id.*

The majority's opinion argument is an attempt to shift the burden to respondent-mother to show further prejudice where the burden to hold the hearing clearly and solely rests upon the clerk, and ultimately upon the trial court. The only legislative intent that can be inferred from the amended statute is to place the duty and burden on the trial court to timely enter its order to avoid prejudice to respondent-mother. Even if a showing of prejudice is required, respondent-mother has clearly articulated and shown prejudice to reverse the order. I vote to reverse the order and respectfully dissent.