NO. COA13-947

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

IN THE MATTER OF:

                                         Wilson County
                                         No. 12 JA 66
R.R.N.


    Appeal by respondent from order entered 22 July 2013 by
Judge Pell C. Cooper in Wilson County District Court.  Heard in
the Court of Appeals 27 March 2014.


    *Stephen L. Beaman for petitioner-appellee Wilson County
    Department of Social Services.*

    *Appellate Defender Staples S. Hughes, by Assistant
    Appellate Defender Annick Lenoir-Peek for respondent-
    appellant.*

    *Administrative Office of the Courts, by Appellate Counsel
    Tawanda N. Foster, for guardian ad litem.*


    ELMORE, Judge.


    Respondent, the mother of the juvenile, appeals from an
order adjudicating R.R.N. an abused and neglected juvenile.
After careful review, we reverse.

## I.  **Background**

    On 30 November 2012, the Wilson County Department of Social
Services ("DSS") filed a petition alleging that R.R.N. was an

abused and neglected juvenile. DSS amended the petition on 11 December 2012. DSS stated that it received a Child Protective Services report on 20 August 2012 claiming that R.R.N. had been sexually abused. R.R.N. had visited the home of her alleged abuser ["Mr. B."], who was her stepfather's cousin, on 18 August 2012. Following the visit, the juvenile disclosed to respondent that she had been having a relationship with Mr. B., which included him fondling her breasts and kissing her. Respondent reported the alleged abuse to DSS. Subsequently, during an interview with a social worker, the juvenile stated that she had performed oral sex on Mr. B., he had digitally penetrated her, and she and Mr. B. had originally planned to have sexual intercourse during her visit on 18 August 2012. DSS alleged that Mr. B. and his wife had been "acting as caretakers for [R.R.N.] that evening and were providing care to her in their home." After the disclosure of the abuse, respondent and the juvenile's stepfather did not allow any further contact between R.R.N. and Mr. B. and sought counseling for the juvenile. R.R.N. underwent a Child Medical Evaluation on 10 September 2012. The juvenile's statements during the interview were consistent with the disclosures made to the social worker.

On 30 January 2013, respondent moved to dismiss DSS' petition pursuant to Rule 12(b)(6). Specifically, respondent argued that the Juvenile Code did not apply because Mr. B. was not a parent, guardian, custodian, or caretaker for the juvenile as defined by the Juvenile Code. The trial court denied the motion.

Adjudicatory hearings were held on 13, 14, 15, and 29 March 2013. The trial court found as fact that the juvenile had (1) performed oral sex on Mr. B., (2) they had engaged in kissing, (3) Mr. B. had touched the juvenile's breasts and digitally penetrated her, and (4) that Mr. B. acted as a caretaker for the juvenile on 18 August 2012. Accordingly, the trial court adjudicated R.R.N. as an abused and neglected juvenile. The court ordered that custody of R.R.N. should remain with respondent, closed the case and terminated further review. Respondent appeals.

## II. **Analysis**

Respondent argues that R.R.N. was not an abused or neglected juvenile because Mr. B. was not a caretaker. More specifically, respondent contends that the trial court erred in finding that Mr. B. was "entrusted" with R.R.N.'s care as

required by N.C. Gen. Stat. § 7B-101(3). We agree and note that this issue is one of first impression for our courts.

"The role of this Court in reviewing a trial court's adjudication of neglect and abuse [and dependency] is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]" *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (internal quotations and citation omitted). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." *Id.* (citation omitted). "The trial court's 'conclusions of law are reviewable *de novo* on appeal.'" *In re D.H.*, 177 N.C. App. 700, 703, 629 S.E.2d 920, 922 (2006).

The Juvenile Code includes in its definition of abuse and neglect those juveniles who have been abused or neglected by a "caretaker." N.C. Gen. Stat. § 7B-101(1) (2013). Caretaker is defined as:

> Any person other than a parent, guardian, or custodian who has responsibility for the health and welfare of a juvenile in a residential setting. A person responsible for a juvenile's health and welfare means a stepparent, foster parent, an adult member of the juvenile's household, [or] an adult

relative entrusted with the juvenile's care[.]

N.C. Gen. Stat. § 7B-101(3) (2013).

The primary purpose of the "caretaker" statute, N.C. Gen. Stat. § 7B-101(3), is to protect the juvenile from abuse and neglect inflicted by an adult member of the juvenile's household. In addition, the statute serves to protect the juvenile from abuse and neglect inflicted by an adult relative who has been entrusted with responsibility for the health and welfare of the child. These relatives include persons related to the juvenile by blood as well as marriage, including step-parents and extended step-relatives.[1] The trial court must consider the totality of the circumstances to discern whether the relative has been "entrusted" with the juvenile's care under N.C. Gen. Stat. § 7B-101(3).

Generally, an adult relative is not "entrusted" with a juvenile's care for the purposes of being a caretaker unless an extended-care situation is in play. Such situations may include a prolonged visit by the juvenile to a relative's residence during which time the relative gains apparent or actual authority over the juvenile's health and welfare.

---

[1] *See* North Carolina DSS On-line Manuel, Chapter VIII: Protective Services 1407. http://info.dhhs.state.nc.us/olm/manuals/dss/csm-60/man/CS1407-01.htm.

Alternatively, a relative may inadvertently become entrusted with the child's care. For example, and assuming this issue was presented in *In re P.L.P*, we would support a determination that P.L.P's uncle became her caretaker when P.L.P's mother left her in the uncle's care "for the night and had not returned for a few weeks." 173 N.C. App. 1, 3, 618 S.E.2d 241, 243 (2005) *aff'd*, 360 N.C. 360, 625 S.E.2d 779 (2006). By the mother's extended absence, the uncle became entrusted with P.L.P's care. However, had P.L.P's mother returned the following day, the uncle would have been responsible for P.L.P's temporary supervision.

Here, the basis of the petition filed by DSS was that Mr. B. satisfied the definition of "caretaker" because: (1) he was a step-cousin, and (2) he was entrusted with the juvenile's care when her parents permitted her to sleep over at his home on 18 August 2012. Specifically, the petition alleges that R.R.N. is an abused juvenile because her "parent, guardian or caretaker" "created or allowed to be created serious emotional damage" to the juvenile on 18 August 2012. The petition also alleges that R.R.N. is a neglected juvenile because she "lived" in an environment injurious to her welfare on 18 August 2012, the evening that R.R.N. slept at Mr. B.'s residence. The trial

court concluded that Mr. B. was the juvenile's "caretaker," finding: (1) Mr. B. and the juvenile's stepfather were first cousins; (2) Mr. B. "acknowledged that he and his wife . . . were responsible for the care and supervision of [R.R.N.] when she was left with them overnight on August 18, 2012;" and (3) the sexual contact occurring between Mr. B. and the juvenile occurred at Mr. B.'s residence.

We disagree with the trial court's interpretation of the term "caretaker" on these facts. The situation before us did not come within the purview of the Juvenile Code until R.R.N. spent the night at Mr. B.'s residence. Had Mr. B. simply been the father of the juvenile's friend, the Juvenile Code would not apply. Alternatively, had the abuse occurred absent the sleepover situation, the Juvenile Code would similarly not apply. Regardless, and despite a familial relationship, Mr. B. was not R.R.N.'s caretaker because he was not "entrusted" with her care by virtue of supervising the sleepover.

When a parent or guardian allows a child to attend a sleepover, the parent does not relinquish responsibility over the child's health and welfare. This is evidenced by the following two situations. First, should R.R.N. have needed medical treatment during the night, it would be respondent, not

Mr. B., who would have had the authority to make R.R.N.'s health-related decisions. Respondent was in town and could easily have been contacted by physicians or by Mr. B. Second, if R.R.N. became scared to sleep away from home, R.R.N. would likely have been returned to respondent's care that same evening. As such, and given the temporary nature of a sleepover, the adult supervisor, whether a relative or not, is not "entrusted" with the child's care as contemplated by N.C. Gen. Stat. § 7B-101(c). The adult supervisor must only attempt to ensure the visiting child's safety. Respondent, not Mr. B., was responsible for R.R.N.'s health and welfare on 18 August 2012.

In its petition, DSS does not allege that respondent or R.R.N.'s stepfather, the two adults with whom R.R.N. resided, were aware of or contributed to R.R.N.'s abuse or neglect. In fact, the petition provides that respondent insured R.R.N.'s safety "by not allowing any further contact with Mr. and Mrs. [B.]" and by "making sure [R.R.N.] attends counseling on a consistent basis." Further, there is no indication that the trial court was concerned for R.R.N.'s safety in respondent's home. This is evidenced by the fact that the trial court

released R.R.N. into respondent's custody after adjudicating her abused and neglected.

One intended purpose of juvenile proceedings for abuse, neglect, and dependency as expressed in N.C. Gen. Stat. § 7B-100(3), is "[t]o provide for services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence[.]" In adjudicating R.R.N. abused and neglected on these facts, the trial court failed to account for the intention of the Juvenile Code to respect family autonomy. R.R.N.'s needs for safety, continuity, and permanence were at all relevant times sufficiently met by respondent.

### III. <u>Conclusion</u>

In concluding that Mr. B. was R.R.N.'s caretaker, the trial court stretched N.C. Gen. Stat. § 7B-101(3) beyond its intended scope. Mr. B. was simply a relative who sexually assaulted R.R.N. while she was under his temporary supervision. At no time was Mr. B. responsible for R.R.N.'s health and welfare. Further, not every child who is the victim of a crime where the perpetrator is a family member requires the protection of the Juvenile Code. Our legal system has appropriate mechanisms in place to handle perpetrators of such crimes. In sum, the trial

court erred in applying the Juvenile Code on these facts and in subsequently adjudicating R.R.N. abused and neglected. Accordingly, we reverse.  Respondent's remaining argument is now moot.

Reversed.

Judges CALABRIA and STEPHENS concur.