ELMORE, Judge.
Respondent-mother and respondent-father (collectively "respondents") appeal from orders adjudicating their children Christine to be an abused and neglected juvenile, and Cynthia, Meghan, and Thomas[1] to be neglected juveniles, and disposition orders continuing custody of the children with the Sampson County Department of Social Services ("DSS"). We affirm in part and reverse in part.
I. Background
On 30 June 2017, DSS obtained nonsecure custody of Christine, Cynthia, Meghan, and Thomas. DSS filed juvenile petitions alleging that Cynthia, Meghan, and Thomas were neglected and dependent, and that Christine was abused, neglected, and dependent. The DSS petitions alleged that Christine and Cynthia were previously in foster care due to respondent-mother's drug use and that DSS had provided services to the family due to improper discipline. On 31 May 2016, Christine reported to her teacher that respondent-father had been sexually assaulting her for approximately a year. Christine also informed a Child Protective Services ("CPS") social worker and hospital staff that respondent-father had assaulted her that morning before school. Respondent-mother was able to confirm portions of Christine's statement regarding the assault. DSS recommended that respondent-father leave the home for the remainder of the investigation and he agreed. Respondents agreed to a safety plan that respondent-father would not have contact with the children "until further recommendation from DSS."
The DSS petitions further alleged that a few days after 31 May 2016, respondent-father returned to the home when the children were not there and took many of Christine's belongings, including clothes and electronics. After a rape kit was performed on Christine on 31 May 2016, respondent-father informed respondent-mother that his DNA may be found on Christine's vaginal area due to her using his beard trimmer. Christine had previously disclosed to respondent-mother that she was being sexually abused by respondent-father and that body fluids could be found in the home on a sheet and some clothing. Respondent-mother kept those items until Christine later recanted her disclosure after respondent-father threatened and pressured her to recant. The safety plan was compromised when respondent-father came to the hospital Christine was at and when respondent-mother allowed respondent-father to be in the presence of Christine.
The juvenile petitions came on for adjudication on 7 June 2017. On 2 August 2017, the trial court adjudicated Christine to be an abused and neglected juvenile, and Meghan and Cynthia to be neglected juveniles. On 23 August 2017, the trial court adjudicated Thomas to be a neglected juvenile. The disposition hearing was held on 24 and 25 August 2017. Through disposition orders entered 8 November 2017, the children remained in the custody of DSS. Respondents appeal.
II. Discussion
On appeal, respondents argue the trial court's factual findings are insufficient to supports its conclusions that Cynthia, Meghan, and Thomas were neglected juveniles. We agree.
Appellate review of an adjudication order is limited to determining "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]" In re T.H.T. , 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citation and internal quotation marks omitted), aff'd as modified , 362 N.C. 446, 665 S.E.2d 54 (2008). Unchallenged factual findings are binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). We review a trial court's conclusions of law de novo . In re J.S.L. , 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).
The Juvenile Code defines a "neglected juvenile" as one
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or the custody of whom has been unlawfully transferred under G.S. 14-321.2 ; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2017). In order for a child to be adjudicated neglected, "this Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide 'proper care, supervision, or discipline.' " In re Safriet , 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (citation omitted).
Here, the trial court made the following factual findings to support its adjudications of neglect and abuse as to Christine, and its adjudications of neglect as to Cynthia, Meghan, and Thomas:
8. That the Respondent Father had sexual intercourse with [Christine] on the morning of May 31, 2016, before school and while the Respondent Mother was not at home.
9. That the sexual encounter occurred in the master bedroom of the home and when the Respondent Mother arrived home the Respondent Father left [Christine] and went into the bathroom.
10. That as the Respondent Mother entered into the home she heard the Respondent Father enter into the bathroom and witnessed [Christine] adjusting her pants and/or belt.
11. [Christine] was observed by her teacher ... to be upset while at school on May 31, 2016, and when [the teacher] inquired [Christine] reported that she had sexual intercourse with her father that morning.
12. That [Christine] appeared to be under the stress of the sexual assault during her disclosure to [her teacher].
....
14. That the Respondent Parents entered into a voluntary protection plan on the same day, May 31, 2016, whereupon the Respondent Father agreed to move out of the home and have no contact with [Christine].
15. That the Respondent Mother also agreed to enroll [Christine] in therapy and was instructed to inform the therapist of the allegations; however, the Respondent Mother failed to disclose to [Christine's] therapist any sexual abuse allegations made by [Christine] or even the involvement of [DSS].
....
17. [Respondents] violated the safety plan on at least two occasions as the Respondent Father continued to have face-to-face contact with [Christine].
18. ... [T]he paternal grandmother of [Christine] took [Christine] to the emergency room at Cape Fear Valley Hospital on May 31, 2016, as a result of the allegations.
....
20. That ... [Christine] disclosed to [the paternal grandmother] that [respondent] father "did her from behind."
21. That the Respondent Father, despite the safety plan in place, met [the paternal grandmother] at the hospital to sign [Christine] in.
....
23. That [Christine] gave a clear and consistent disclosure of sexual abuse by the Respondent Father to the medical staff at Cape Fear Valley Hospital on the evening of May 31, 2016, as a result of [the paternal grandmother] transporting her to the hospital.
24. That the medical professionals at Cape Fear Valley Hospital made a referral of [Christine] to Dr. Danielle Thomas-Taylor, a child abuse pediatrician[.]
....
26. That Dr. Danielle Thomas-Taylor conducted a child medical evaluation of [Christine] that included a review of the medical records from Cape Fear Valley Hospital as well as an examination of [Christine] on July 5, 2016.
27. That [Christine] again reported the sexual encounter with her father that occurred on May 31, 2016, but also reported prior sexual encounters with her father.
28. That [Christine] reported to Dr. Danielle Thomas-Taylor that during her sexual assaults she would always be facing away from her father and she expressed the belief that her father knew it was wrong and did not want to face her.
29. That [Christine] experienced pain during the May 31, 2016 sexual assault.
30. That [Christine] also suffered from bleeding and soreness for days as a result of other sexual assaults.
31. That [Christine] has suffered from stress and anxiety as a result of the actions of her father and the pressure placed upon her by her family.
32. That [Christine] suffered from pressure in her chest "like knives", hands becoming tingly, and sensations that she could not breath[e].
33. That Dr. Danielle Thomas-Taylor testified that [Christine] exhibits characteristics of other children who have been sexually and emotionally abused.
34. That [Christine] had previously disclosed sexual abuse to the Respondent Mother in December of 2015 and even provided her with her pajamas, a comforter, and sheets whereupon the Respondent Mother placed them in a large bag.
35. That the Respondent Father later took [Christine] to get food and sat in the vehicle with her alone for hours telling her that he could go to jail as a result of her allegations and that he was the only one who works. Shortly after this conversation [Christine] recanted her story. The Respondent Father later washed the pajamas, comforter, and sheets.
....
39. That Dr. Maria O'Tuel was tendered to the Court and accepted as an expert in clinical psychology and assessments of child abuse.
40. That Dr. O'Tuel conducted a forensic evaluation of [Christine] that involved diagnostic testing as well as interviews with [Christine] and numerous other individuals.
41. That [Christine] was very aware of the legal ramifications of her allegations upon the father and indicated to Dr. O'Tuel her belief that her father may be imprisoned for "15-20" years for each sexual assault.
42. [Christine] gave consistent reports to Dr. O'Tuel regarding the Respondent Father's emotional plea for her to recant her story after a prior allegation of sexual abuse as well as the fact she provided sheets and pajamas to her mother only for the Respondent Father to later wash them.
43. That Dr. O'Tuel testified that reporting sexual abuse is not a singular event but, rather, a process and that recantations are a part of the process.
44. That Dr. O'Tuel explained that isolation for a child is an important factor in recantations and that such isolation can be the result of a lack of maternal support, conflicting emotions of the child, and the pressure of court proceedings.
45. That Dr. O'Tuel testified that [Christine] has characteristics that are similar to other children who have been sexually and emotionally abused.
....
52. That [Christine] has suffered from multiple incidents of sexual abuse by the Respondent Father.
53. That [Christine] has suffered from immense pressure by her family to recant her story that has resulted in great anxiety in [Christine].
54. That the Respondent Mother had the opportunity to protect [Christine] after prior disclosures of sexual abuse but failed to do so.
55. That [Christine] is an abused juvenile pursuant to N.C. Gen. Stat. § 7B-101(1) in that [Christine's] parent, guardian, custodian, or caretaker (i) has committed, permitted, or encouraged the commission or [sic] a sex or pornography offense with or upon the Juvenile in violation of the criminal law; and (ii) has created or allowed to be created serious emotional damage to the Juvenile.[2 ]
56. That [the children are] neglected juvenile[s] pursuant to N.C. Gen. Stat. § 7B-101(15) in that [the children] (i) do [ ] not receive proper care, supervision, or discipline from [the children's] parent, guardian, custodian, or caretaker; and (ii) live[s] in an environment injurious to the [children's] welfare.[3 ]
....
60. That it is in the best interest of the [children] that his/her custody be with [DSS] with placement discretion and with authority to provide and authorize necessary medical, dental, psychological, psychiatric, educational, and assessment services.[4 ]
61. That a return of the [children] to the removal home would be contrary to the welfare of the [children] at this time.[5 ]
In In re J.C.B. , 233 N.C. App. 641, 757 S.E.2d 487, disc. rev. denied , 367 N.C. 524, 762 S.E.2d 213 (2014), the respondent-father was accused of sexually abusing his cousin's step-daughter during her overnight visit to the home that the respondent-father shared with his wife, their son J.C.B., and their nieces C.R.R. and H.F.R. Id. at 642, 757 S.E.2d at 488. The trial court adjudicated the son and the two nieces to be neglected juveniles. Id. On appeal, we held that the trial court's findings were insufficient to support the conclusion that the son and two nieces were harmed by the respondent-father's actions or exposed to a substantial risk of harm:
Even if we assume arguendo that respondent-father abused [his cousin's step-daughter], a juvenile, in the home where J.C.B., C.R.R., H.F.R., and respondent-father lived, this fact alone does not support a conclusion that J.C.B., C.R.R., and H.F.R. were neglected. ... The trial court made virtually no findings of fact regarding J.C.B., C.R.R., or H.F.R., and wholly failed to make any finding of fact that J.C.B., C.R.R., and H.F.R. were either abused themselves or were aware of respondent-father's inappropriate relationship with [his cousin's step-daughter]. Additionally, the trial court failed to make any findings of fact regarding other factors that would support a conclusion that the abuse would be repeated. As a result, the findings of fact do not support a conclusion that respondent-father's conduct created a substantial risk that abuse or neglect of J.C.B., C.R.R., and H.F.R. might occur.
Id. at 644-45, 762 S.E.2d at 489-90 (citations and internal quotation marks omitted).
Here, the trial court made sixty factual findings in each of Cynthia, Meghan, and Thomas' adjudication orders and only findings 55, 59, and 60 concerned Cynthia, Meghan, and Thomas specifically. As in J.C.B. , the evidence and the trial court's findings are insufficient to show that Cynthia, Meghan, and Thomas suffered some physical, mental, or emotional impairment, or that there was a substantial risk of such impairment. There was no evidence or findings of fact made that Cynthia, Meghan, and Thomas were aware of Christine's abuse or that the abuse would be repeated. Accordingly, because the findings do not establish that Cynthia, Meghan, and Thomas were neglected juveniles, we reverse the trial court's adjudication and disposition orders as to these three children. Because neither respondent-mother nor respondent-father challenged the adjudication or disposition orders as to Christine in their principal briefs, we affirm the adjudication of Christine as an abused and neglected juvenile and the trial court's resulting disposition. In light of our disposition of these appeals, we decline to address respondent-mother's remaining argument in which she challenges the evidentiary sufficiency of several of the trial court's factual findings.
AFFIRMED IN PART; REVERSED IN PART.
Report per Rule 30(e).
Judges DAVIS and ZACHARY concur.

Pseudonyms are used to protect the minors' identities.

Finding numbered 55 was only included in Christine's adjudication order.

This finding is numbered 55 in the adjudication orders as to Cynthia, Thomas, and Meghan.

This finding is numbered 59 in the adjudication orders as to Cynthia, Thomas, and Meghan.

This finding is numbered 60 in the adjudication orders as to Cynthia, Thomas, and Meghan.