IN THE MATTER OF: D.H., C.H., B.M., C.H. III

No. COA05-1501

(Filed 6 June 2006)

**Termination of Parental Rights— failure to appoint guardian ad litem—mental health issues of parent**

The trial court did not err by terminating respondent mother's parental rights without appointing a guardian ad litem (GAL) under N.C.G.S. § 7B-1101 or N.C.G.S. § 1A-1, Rule 17 even though respondent contends her mental health problems were substantially inter-

**IN RE D.H., C.H., B.M., C.H. III**

[177 N.C. App. 700 (2006)]

twined with DSS's allegations of grounds to terminate her parental rights, because: (1) respondent did not request a GAL be appointed, and a psychologist who testified did not recommend the trial court appoint a GAL for respondent; (2) the trial court did not make repeated findings that respondent was incapable of parenting her minor children based upon her mental illness; and (3) the termination of respondent's parental rights was not based on mental health issues, but instead on neglect, willfully leaving the children in foster care for more than twelve months without showing reasonable progress, willfully failing to provide financial support to the children, and abandonment of the children for at least six months immediately preceding the filing of the petition.

Appeal by respondent mother from order entered 1 June 2005 by Judge James T. Hill for Durham County District Court. Heard in the Court of Appeals 11 May 2006.

*Cathy L. Moore, for petitioner-appellee Durham County Department of Social Services.*

*Wendy C. Sotolongo, for petitioner-appellee Guardian ad Litem.*

*Richard Croutharmel, for respondent-appellant.*

TYSON, Judge.

K.K. ("respondent") appeals from order entered terminating her parental rights to her minor children, D.H. and C.H., born in July 2000, B.M., born in September 1998, and C.H. III, born in February 2002. We affirm.

## I. Background

Respondent was allegedly gang raped by approximately ten boys from her school on 15 September 1993, when she was fifteen years of age and no charges were filed. Respondent refused to testify against the alleged assailants. During the proceedings leading up to this appeal, respondent was diagnosed with post-traumatic stress disorder as a result of these alleged offenses.

Respondent dropped out of high school during the tenth grade. She worked in fast food restaurants and as a nurse's aid until 1999 when she moved into her boyfriend's home. Her boyfriend supported her financially.

By the time respondent was twenty-three years old, she had given birth to five children. Durham County Department of Social Services

[177 N.C. App. 700 (2006)]

("DSS") filed a juvenile petition alleging neglect of C.H. and D.H. on 21 December 2001. On 28 March 2002, the trial court adjudicated these children neglected. The children were placed in DSS's custody.

In April 2002, respondent admitted to using illegal drugs. In May 2002, respondent was arrested on twenty-three charges, including possession of cocaine and marijuana with the intent to sell or deliver, possession of marijuana and Schedule IV narcotics, maintaining a dwelling for the sale of drugs, and six charges of obtaining property by false pretenses. After respondent was released from jail, she moved into the home of Mr. H., the father of C.H. III, C.H., and D.H.

On 17 October 2002, respondent, Mr. H., and Mr. H.'s mother were arrested during a drug raid at Mr. H.'s home. At that time, all of her children went to live with respondent's mother. After release from jail, respondent moved into her mother's residence.

DSS filed another juvenile petition alleging neglect of T.H., B.M., and C.H. III on 21 November 2002 due to concerns respondent might remove the children from her mother's home. The trial court adjudicated B.M. and C.H. III to be neglected on 9 April 2003. All three children were placed in DSS's custody.

Respondent continued to reside in her mother's home. She made progress during this time. Respondent contacted the Durham Center in April and May 2003 for mental health services. She completed a parenting program. Respondent assisted in the daily care of the children. The medical provider for the twins, D.H. and C.H., stated, "[t]he mother of the children . . . has shown steady progress personally while living with her mother and her children."

Mr. H. was released from prison on 18 June 2003. Following his release, respondent missed several mental health appointments and was fired from her job. On 12 August 2003, police responded to a domestic violence complaint at respondent's mother's home. The police requested respondent and Mr. H. to leave her mother's home. Following this event, respondent resided with Mr. H.'s family at multiple addresses until April 2005, when she moved into her sister's home.

The children remained in the maternal grandmother's home. The childrens' guardian *ad litem* ("GAL") advocated to remove all four children from their grandmother's home due to "the state of filth demonstrated by the children (and extreme odor), lack of medical care and demonstrated level of hunger." The GAL also reported respondent

**IN RE D.H., C.H., B.M., C.H. III**

[177 N.C. App. 700 (2006)]

stated her children were not hungry and described the children as, "my children are greedy children, greedy children."

The trial court changed the permanent plan to adoption and ordered DSS to initiate termination of all parental rights on 25 May 2004. On 4 August 2004, the trial court ordered the parties to participate in mediation on the issue of placement of the children. DSS filed a motion to terminate the parental rights of the parents on 24 August 2004.

On 6 December 2004, respondent's attorney filed a motion to withdraw due to lack of contact with respondent. The trial court granted that motion on 23 December 2004. On 11 February 2005, the Durham County Public Defender assigned a court appointed attorney to represent respondent.

The trial court conducted the termination hearing on 5 and 6 May 2005 and terminated respondent's parental rights to C.H., D.H., B.M., and C.H. III. At the time of the hearing, respondent admitted she had not seen C.H., D.H., or C.H. III since January 2004 and had seen B.M. four times during the preceding year. Respondent appeals.

## II. Issues

Respondent argues the trial court erred by proceeding to terminate her parental rights without appointing a guardian *ad litem* because her mental health problems were substantially intertwined with DSS's allegations of grounds to terminate her parental rights.

## III. Standard of Review

"On appeal, our standard of review for the termination of parental rights is whether the trial court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law." *In re Baker*, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003) (citations and internal quotations omitted).

The trial court's "conclusions of law are reviewable *de novo* on appeal." *Starco, Inc. v. AMG Bonding and Ins. Servs.*, 124 N.C. App. 332, 336, 477 S.E.2d 211, 215 (1996).

## IV. Appointment of a GAL

N.C. Gen. Stat. § 7B-1101 governs the appointment of a GAL during termination of parental rights proceedings. N.C. Gen. Stat. § 7B-1101 (2003) provides, the trial court shall appoint a GAL to a parent "where it is alleged that a parent's rights should be terminated pursuant to [N.C.

**IN RE D.H., C.H., B.M., C.H. III**

[177 N.C. App. 700 (2006)]

Gen. Stat. § 7B-1111(a)(6)], and the incapability to provide proper care and supervision pursuant to that provision is the result of . . . mental illness, organic brain syndrome, or another similar cause or condition."

In its motion to terminate respondent's parental rights, DSS alleged:

a. The mother has neglected the children, and the children are neglected children within the meaning of N.C. Gen. Stat. § 7B-101(15). There is a reasonable probability of the repetition of neglect.

b. The mother has wilfully left the children in foster care for more than twelve (12) months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the children.

c. The children have been placed in the custody of Durham DSS and the mother, for a continuous period of six (6) months next preceding the filing of the petition, has wilfully failed for such period to pay a reasonable portion of the cost of care for the children although physically and financially able to do so.

d. The mother has wilfully abandoned the children for at least six (6) consecutive months immediately preceding the filing of the petition.

In the adjudication and termination petitions, DSS did not allege respondent's minor children were dependent. In the adjudication order of B.M. and C.H. III, the trial court stated, "[t]he mother is unable to provide appropriate care and supervision for the children due to her mental health issues, criminal involvement, and general instability."

In the adjudication order of C.H. and D.H., the trial court made the following finding of fact, "[a] specific factor as to the mother is that she appears to be depressed and that it appears that she had some mental health issues which may have impaired her ability to consistently follow through on the children's needs." When the trial court reviewed the matter for all of the children on 8 July 2003, 1 October 2003, 3 December 2003, 2 March 2004, 25 May 2004, and August 2004, it ordered respondent to "continue to seek mental health treatment through The Durham Center." Respondent argues, "[a] trial court's failure to appoint a [GAL] for a respondent-parent with mental health issues early on in abuse and neglect proceedings . . . is reversible error where the termination of parental rights was based, in part, on the mental health issues."

This Court held in *In re O.C. and O.B.*, "the motion to terminate parental rights neither alleged respondent was incapable of caring for the minor children due to a debilitating condition, nor cited G.S. § 7B-1111(a)(6)." 171 N.C. App. 457, 462, 615 S.E.2d 391, 394, *disc. rev. denied*, 360 N.C. 64, 623 S.E.2d 587 (2005). The respondent in *In re O.C. and O.B.* argued the termination order should be reversed because the initial adjudication petition alleged the children to be both neglected and dependant, and a GAL had not been appointed to her. 171 N.C. App. at 462, 615 S.E.2d at 394. This Court has rejected this argument and has stated:

> Only the order on termination of parental rights is before this Court; the order on adjudication is not. Even assuming, arguendo, that the trial court failed to appoint a GAL for respondent during the adjudication proceedings and that she was even entitled to such a GAL, we reject her argument that this bears a legal relationship with the validity of the later order on termination. First, there is no statutory authority for the proposition that the instant order is reversible because of a GAL appointment deficiency that may have occurred years earlier. Our legislature has adopted two separate juvenile GAL appointment provisions concerning the appointment of a GAL for a parent, one found in Article 6 of the Juvenile Code concerning petitions alleging the status of the child, G.S. § 7B-602(b), and a second, equally specific provision in Article 11 concerning the appointment of a GAL for a parent within the context of a motion or petition for termination of parental rights, G.S. § 7B-1101. Neither of these two provisions, nor anything in our Juvenile Code, evinces an intent on the part of the legislature that a failure to appoint a GAL during the earlier adjudication proceedings impacts a later order on termination of parental rights. Secondly, there is no common law authority to support such a proposition.

*Id.* at 462-63, 615 S.E.2d at 394-96.

The North Carolina General Assembly recently amended the law governing appointment for a GAL for a parent. The amendments are applicable only to proceedings filed on or after 1 October 2005. The amendment reveals the legislature's intent to limit the appointment of a GAL for a parent. The amended statute provides:

> On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent if the court determines that there is a reasonable basis to believe that the parent is incompetent

or has diminished capacity and cannot adequately act in his or her own interest. The parent's counsel shall not be appointed to serve as the guardian ad litem.

N.C. Gen. Stat. § 7B-1101.1(c) (2005).

Respondent cites this Court's decision in *In re T.W.*, and argues, "[w]hile [r]espondent-[m]other may have been competent for some purposes, including her ability to perform routine tasks and maintain employment, it does not necessarily follow that she is not debilitated by her mental health issues when it comes to parenting her children." 173 N.C. App. 153, 160, 617 S.E.2d 702, 705 (2005).

The trial court made the following findings of fact in *In re T.W.*:

In its 25 July 2001 order, based upon the 27 April 2001 hearing which occurred prior to respondent's psychological evaluation, the court included in its Findings of Fact that it was "concerned about the mother's ability to raise these children in light of her mental health and her current medications." The court went on to state that it expected DSS to "take appropriate action, including removing the children from the home" if there were further "concerns over the mother's mental health stability . . . ." Again, in its 13 December 2001 Adjudication and Disposition Order regarding E.H., based upon the 24 August 2001 hearing, the court found that "the []mother exhibited mental health instability." Similarly, in its Review Order of 13 December 2001 regarding T.W. and L.W., also based upon the 24 August 2001 hearing, the court found as a fact that "the psychological evaluations indicates [sic] [respondent] cannot adequately parent on her own." The court reiterated this identical finding in its 13 December 2001 Permanency Planning Order for all three children based upon its 21 September 2001 hearing.

Finally, in its order Terminating Parental Rights, the court made the following finding of fact:

The mother has been diagnosed with bipolar affective disorder with possible psychotic disorder. She is on medication for these ailments, but testified that she could take the medication at her pleasure and when she feels an "episode" coming on. She testified she has been given approval by her physician for this behavior. This testimony is beyond belief and shows a lack of insight by her into her mental status and ability to raise children.

173 N.C. App. at 158, 617 S.E.2d at 705.

**IN RE D.H., C.H., B.M., C.H. III**

[177 N.C. App. 700 (2006)]

The respondent in *In re T.W.* specifically requested a GAL be appointed to her. 173 N.C. App. at 159, 617 S.E.2d at 706. Also, a psychologist recommended to the court that a GAL be appointed to the respondent based on the respondent's psychological evaluation. *Id.* Despite these requests, the trial court failed to hold a hearing on the issue and no GAL was appointed for the respondent. *Id.* This Court reversed the termination order and stated:

> Clearly, the foregoing findings demonstrate the court's awareness of respondent's severe limitations in the ability to parent her children based upon her mental illness. Therefore, notwithstanding the fact that the court did not refer to North Carolina General Statutes section 7B-1111(a)(6) specifically in its order terminating respondent's parental rights, it was the court's repeated findings that respondent was incapable of parenting her minor children based upon her mental illness in addition to respondent's own motion that triggered the requirement for appointment of a [GAL].

*Id.* at 159, 617 S.E.2d at 705.

Here, respondent did not request a GAL be appointed. The psychologist who testified did not recommend the trial court appoint a GAL for respondent. The psychologist concluded, "this evaluation shows no reason that she should not be capable of adequate parenting to her children." The trial court did not make "repeated findings that respondent was incapable of parenting her minor children based upon her mental illness." *Id.*

The termination of respondent's parental rights was not based on "mental health issues." In its conclusions, the trial court did not reference respondent's mental health issues. The trial court terminated respondent's parental rights based on: (1) neglect; (2) wilfully leaving the children in foster care for more than twelve months without showing reasonable progress; (3) wilfully failing to provide financial support to the children; and (4) abandonment of the children for at least six months immediately preceding the filing of the petition.

This Court considered similar facts in *In re J.A.A. & S.A.A.*, and held:

> In the instant case, the petitions for termination of respondent's parental rights contained no allegations that respondent was incapable of properly providing care for her children. Rather, the petition alleged the children were neglected within the meaning of N.C.

**IN RE D.H., C.H., B.M., C.H. III**

[177 N.C. App. 700 (2006)]

Gen. Stat. § 7B-1111. Although the petition does contain reference to respondent's drug abuse and alleged mental illness, the trial court is not required to appoint a guardian ad litem in every case where substance abuse or some other cognitive limitation is alleged.

. . . .

This case is distinguishable from *In re T.W.*, 173 N.C. App. 153, 617 S.E.2d 702 (2005) and *In re B.M.*, 168 N.C. App. 350, 607 S.E.2d 698 (2005). In *In re T.W.*, although incapability was not alleged, the respondent specifically requested the court appoint her a guardian ad litem and she underwent psychological evaluation, in which the doctor recommended she be appointed a guardian ad litem. Despite this, the trial court failed to revisit the guardian ad litem issue during the entire ensuing proceedings. In *In re B.M.*, DSS's petition to terminate the respondents' parental rights alleged the parents' incapability as grounds for termination. In neither of these cases did the trial court conduct a hearing on whether a guardian ad litem should have been appointed.

In this case, neither incapability within the meaning of N.C. Gen. Stat. § 7B-1111(a)(6) was alleged, nor did respondent request that a guardian ad litem be appointed.

175 N.C. App. 66, 70-71, 623 S.E.2d 45, 48 (2005) (internal quotations and citations omitted).

In *In re J.A.A. and S.A.A.*, this Court also considered whether the trial court erred when it failed to appoint a GAL to the respondent under N.C. Gen. Stat. § 1A-1, Rule 17 (2005), which provides:

When a guardian ad litem is appointed to represent an infant or insane or incompetent person, he must be appointed as follows:

. . . .

(4) When an insane or incompetent person is defendant and service by publication is not required, the appointment may be made upon the written application of any relative or friend of said defendant, or upon the written application of any other party to the action, or by the court on its own motion, prior to or at the time of the commencement of the action, and service upon the insane or incompetent defendant may thereupon be dispensed with by order of the court making such appointment.

**IN RE D.H., C.H., B.M., C.H. III**

[177 N.C. App. 700 (2006)]

An "incompetent adult" and "mental illness" are defined as:

(7) "Incompetent adult" means an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.

. . . .

(12) "Mental illness" means an illness that so lessens the capacity of a person to use self-control, judgment, and discretion in the conduct of the person's affairs and social relations as to make it necessary or advisable for the person to be under treatment, care, supervision, guidance, or control. The term "mental illness" encompasses "mental disease", "mental disorder", "lunacy", "unsoundness of mind", and "insanity." .

N.C. Gen. Stat. § 35A-1101 (2005).

Here, respondent did not request a GAL be appointed. The petition for termination of her parental rights did not allege respondent's incapability to parent the children. No allegations were asserted, and no showing was made that respondent was incompetent. The trial court was not required to appoint a GAL to respondent under either N.C. Gen. Stat. § 7B-1101 or N.C. Gen. Stat. § 1A-1, Rule 17. This assignment of error is overruled.

### V. Conclusion

The trial court did not err in failing to appoint a GAL for respondent. The trial court terminated respondent's parental rights on four separate grounds, either of which is sufficient to uphold the trial court's order. The trial court's conclusions of law are supported by findings of fact that are based upon clear, cogent, and convincing evidence. The trial court's order is affirmed.

Affirmed.

Judges McCULLOUGH and HUDSON concur.