663 S.E.2d 458 (2008)
In the Matter of D.G.
No. COA07-402.
Court of Appeals of North Carolina.
August 5, 2008.
Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.
Glover & Petersen, P.A., by Ann B. Petersen, Chapel Hill, for juvenile-appellant.
*459 STEELMAN, Judge.
Where the trial court's finding of fact challenged by the juvenile is supported by competent evidence in the record, it is binding on appeal. The trial court did not err in modifying the prior dispositional order as to the juvenile.

I. Factual and Procedural Background
Juvenile petitions were filed against D.G., alleging that he had committed the offenses of crime against nature, indecent liberties between children, assault on a handicapped person, and first-degree sex offense on a child. On 18 August 2005, D.G. admitted the allegations in the juvenile petition as to the first-degree sex offense charge. This was based upon D.G. having anal intercourse with a five-year-old boy when D.G. was fifteen years of age. Upon D.G.'s admission of the first-degree sex offense charge, the State dismissed the other three juvenile petitions. At the time of the admission, D.G. was 15 years of age.
The trial court received a recommendation from Burke County Department of Social Services ("DSS") and Foothills Area Authority ("Foothills") that D.G. be placed in a DSS sex offender residential treatment facility. At that point in the hearing, counsel for DSS advised the court:
Our concern is that he is an illegal alien; therefore, there is no state funding available. And any treatment facility would have to be borne totally by the tax payers of Burke County. I don't know what Your Honor was contemplating whether our continued custody is necessary or not, but I would just to make the Court aware of the possible funding issue if he is placed in a residential facility.
The court was then assured by Nancy Mulholland, counselor from the Department of Juvenile Justice, that D.G.'s legal status had "little to do" with the availability of funding and that he was eligible for funding "due to a loophole in the legality of eligibility" and that state funds were available. Based upon these representations, the trial court entered a disposition order with a Level II disposition. This order directed that D.G. be placed in a residential sex offender treatment facility.
On 22 February 2006, a motion for review was filed, stating that D.G. was placed in a sex offender treatment facility on 26 September 2005, but that "funds were no longer available for this placement." Since the victim resides in the home, D.G. could not be returned there. The court counselor sought guidance from the court.
On 4 April 2006, D.G. filed a motion to compel the State of North Carolina to provide him with sex offender treatment. The motion alleged that on 31 March 2006, Foothills Mental Health terminated funding for D.G.'s placement in Hands Up Homes and that without funding he was unable to remain there. On 6 April 2006 a response was filed by Burke County. This response attached a copy of a letter from counsel for Foothills, stating that under federal law, D.G. was not a "qualified alien" and that it could not provide funding for "custodial sex offender treatment." This letter was based upon an opinion obtained from the Office of the North Carolina Attorney General.
On 27 April 2006, a hearing was held before Judge Brady on the motion to review and the motion to compel. During the course of the hearing, D.G. waived formal notice of a motion to amend or modify the prior dispositional order, but opposed any modification. The trial court denied the motion to compel the State to provide funding for D.G.'s residential sex offender treatment and modified the prior adjudication order to provide for a Level III disposition and committed D.G. to a Youth Development Center for an indefinite commitment not to exceed his nineteenth birthday. D.G. appeals.

II. Analysis
In his only argument on appeal, D.G. contends that the trial court erred in modifying the dispositional order from a Level II placement in a residential sex offender program to a Level III indefinite commitment to a Youth Development Center. We disagree.

Standard of review
On appeal, our standard of review of the trial court's findings is whether they are supported by competent evidence. Pineda-Lopez *460 v. N.C. Growers Ass'n, 151 N.C.App. 587, 589, 566 S.E.2d 162, 164 (2002). "If the court's factual findings are supported by competent evidence, they are conclusive on appeal, even though there is evidence to the contrary." Id. (citations omitted). We review challenges to the trial court's conclusions of law de novo. In re D.H., C.H., B.M, C.H. III, 177 N.C.App. 700, 703, 629 S.E.2d 920, 922 (2006) (citation omitted).

Availability of Funding
D.G. first argues that the trial court erred in finding "[t]hat due to a lack of funding pursuant to State and Federal law said placement is no longer available to the Juvenile." We disagree.
There is competent evidence in the record to support the trial court's finding. Representatives of Burke County DSS and Foothills advised the court that they had explored and exhausted all avenues of funding for D.G.'s residential sex offender treatment, and due to federal law, there was none available. Counsel for D.G. acknowledged this, and then stated to the court: "... Your Honor can order the county to pay. I agree with Mr. Kuehnert [counsel for Burke County] with regards to the argument about the U.S. Statute applying to the county funds also. The bottom line is that roughly $128,000 a year placement. If Your Honor orders the county to pay it, the county is going to request that the department find $128,000 in its budget to cover this individual's placement and that's like three or four positions at the department." The only statement to the contrary at the hearing was from Tim Randolph, a resource broker for Meridian Behavioral Services, who stated anecdotally that there were similar cases in other counties that were being funded by the State.
We hold that there was competent evidence to support the trial court's finding:
9. That due to a lack of funding pursuant to State and Federal law said placement is no longer available to the Juvenile.
Thus, this finding is conclusive on appeal. Pineda-Lopez at 589, 566 S.E.2d at 164.
Further, this finding supports the following conclusions of law by the trial court:
1. That the State of North Carolina, Burke County and Foothills Area Programs cannot be compelled to provide services in the nature of a Level 3 placement for the Respondent Juvenile, D.G. who is an undocumented alien.
2. That the Respondent Juvenile has failed to show that the parties named above have willfully failed to comply with the Court's prior Dispositional Order and that none of the said parties are in contempt.

Change in Dispositional Order
Once the trial court found that there was no available funding for D.G.'s residential sex offender treatment, it had no option but to grant the State's motion to modify its prior dispositional order. Modifications of dispositional orders are governed by N.C. Gen.Stat. § 7B-2600(a):
Upon motion in the cause or petition, and after notice, the court may conduct a review hearing to determine whether the order of the court is in the best interests of the juvenile, and the court may modify or vacate the order in light of changes in circumstances or the needs of the juvenile.
N.C. Gen.Stat. § 7B-2600(a) (2007).
This statute clearly states that a prior order can be modified or vacated in light of changes in circumstances, and is not tied exclusively to the needs of the juvenile.
The trial court initially ordered residential sex offender treatment based upon erroneous information provided to it at the dispositional hearing. When this was brought to the trial court's attention, it correctly ruled that it could not compel the provision of the residential sex offender treatment in violation of federal law. Once this decision was reached, the court had no alternative but to modify the dispositional order. These facts constituted a change in circumstance within the intent and meaning of N.C. Gen.Stat. § 7B-2600(a), and the trial court properly modified the dispositional order.
AFFIRMED.
*461 Judge HUNTER concurs.
Judge WYNN dissents in a separate opinion.
WYNN, Judge, dissenting.
This case goes to one of the most basic questions in our democratic system: which branch of government should decide fundamental policy questions affecting our citizenry. Here, the majority would substitute its judgment for that of the executive or legislative branch as to what funding and treatment are available to a juvenile who appears to be an unauthorized immigrant who has been convicted of a sexual offense. Indeed, it may well be that the majority is correct in its conclusion that the federal government would not permit funds to be used to treat juvenile sex offenders who are unauthorized immigrants to this country. Nevertheless, because such a decision should not be made by the judiciary in the absence of clear administrative or statutory law, I dissent.
It is undisputed that there is no definitive legislative or executive ruling that interprets the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) and explicitly disallows the type of treatment being provided to this juvenile as an impermissible public benefit. However, in the instant case, such a finding is a necessary prerequisite to concluding that a "change of circumstances" has occurred, sufficient to merit modifying the disposition. Here, the record discloses that the juvenile was undergoing sex offender treatment when Burke County sought to demonstrate that there had been a "change of circumstances" in his situation, namely, that federal funding would be cut off if the treatment was provided to him. In affirming the trial court's finding to that effect, the majority states that, "[t]here is competent evidence in the record to support the trial court's finding" "[t]hat due to a lack of funding pursuant to State and Federal law [the juvenile's Level III] placement is no longer available to the Juvenile." In fact, the record contains no such evidence.
To the contrary, the trial court's findings of fact specifically state that "the various agencies responsible for [D.G.'s] placement alleged that there were insufficient funds"; that the State and County "argued that they are precluded by State and Federal law from using Federal funds to provide [the previously ordered] placement"; and that "due to a lack of funding pursuant to State and Federal law said placement is no longer available to the Juvenile." (Emphasis added). Such "allegations" and "arguments" do not constitute evidence. Rather, these findings are mere recitations of the State and Burke County DSS positions, as well as that of the Foothills Area Program attorney.
Significantly, the sole document in the record indicating that the juvenile's treatment would be disallowed under PRWORA as a state or local public benefit provided to an immigrant who appears to be unauthorized is the letter from the Foothills Area Program attorney expressing his opinion on the matter. However, contrary to the majority's characterization that this letter was "based upon an opinion obtained from the Office of the North Carolina Attorney General," the memorandum from the Attorney General's office explicitly states that it is only an "advisory letter" that has "not been reviewed and approved in accordance with procedures for issuing an Attorney General's opinion." Thus, the memorandum has no legal force or effect.
Moreover, while the trial court designated as a finding of fact that, "due to a lack of funding pursuant to State and Federal law said placement is no longer available to the Juvenile," that determination is instead a conclusion of law. As noted herein, that conclusion is not supported by findings of fact based on competent evidence, as no evidence in the record before us shows that either state or federal funding has been cut off for, or due to, the placement of this juvenile. Indeed, there has been no legal determination that sexual offender treatment is an impermissible "public benefit" within the meaning of PRWORA, and this Court should decline to make such a ruling based only on allegations and arguments, which do not constitute evidence.
Rather, these types of policy decisions are best left to the other two branches of government, as the judiciary is simply not equipped  nor intended  to undertake the *462 balancing of relative interests necessary to make such determinations. Here, for instance, the decision to provide sex offender treatment to juveniles who are unauthorized immigrants requires weighing that cost against other policy priorities, such as public health and safety. Significantly, the Attorney General's memorandum acknowledged this conflict between a possible benefit provided with the purpose of protecting the public:
... It would appear that providing psychiatric treatment would be a benefit unless one of the exceptions applies.
A person who is a danger to himself or herself would appear to fit the definition of an emergency medical condition and thus be able to be treated under that exception. A person who is a danger to others does not appear to meet any stated exception. However, it seems to me that, if the commitment is for the purposes of public safety, any benefit received by the person is incidental to the protection of the public.

(Emphasis added). Thus, the Attorney General recognized that the legislature or executive branch may decide to allow a public benefit such as funding for sex offender treatment if the commitment is for the purposes of public safety. Again, the policy determination as to what type of funding should be available to county departments should not be made by the Courts.
The facts of this case illustrate the competing policy considerations at issue in such a decision. According to the record, after coming to the United States at the age of fourteen, the juvenile in question attended public high school in Burke County for one year while living with a paternal uncle and his wife. The juvenile has numerous other relatives living in the Burke County area and few remaining ties to his home country of Guatemala, as his father was murdered in Valdese, North Carolina, shortly after immigrating here after the juvenile's mother abandoned the family when the juvenile was four years old. Perhaps most significantly, the juvenile's paternal uncle was in the process of adopting him when the juvenile committed the sexual assault.
The record before us makes no mention of what will happen to the juvenile after he completes his disposition or turns eighteen. If the juvenile is not deported and instead returns to live in Burke County, then his treatment as a sexual offender is even more critical from the perspective of the public safety of our citizens. All parties agree that the juvenile was cooperative and responding extremely well to the treatment prior to being taken out of Hands Up Homes and the initiation of this action.
Again, these facts demonstrate that the disposition of this juvenile necessitates a determination of whether the sexual offender treatment is an impermissible "public benefit" or simply a benefit that is "incidental to the protection of the public." Judicial prudence requires us to leave these policy questions to our legislative and executive branches of government, as their constitutional role is to establish and administer laws that weigh and balance such competing interests. Our role is to apply the law, not to make it.
In sum, because the majority's holding constitutes an impermissible advisory opinion on the availability of state and federal funding for a juvenile in these circumstances, I dissent. Judicial restraint dictates that we refrain from acting in the stead of our legislative and executive officials. For that reason, I certify this question to provide an appeal as a matter of right to our Supreme Court. See N.C. Gen.Stat. § 7A-30(2) (2007) (providing an appeal of right to the Supreme Court "from any decision of the Court of Appeals rendered in a case [i]n which there is a dissent.").