An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-941
NORTH CAROLINA COURT OF APPEALS

Filed:  4 February 2014

IN THE MATTER OF:

C.L.D., C.M.D.                           New Hanover County
                                        Nos. 13 JA 48-49


Appeal by respondent-mother from order entered 31 May 2013 by Judge Melinda H. Crouch in New Hanover County District Court. Heard in the Court of Appeals 7 January 2014.

> *Regina Floyd-Davis, for New Hanover County Department of Social Services, petitioner-appellee.*
>
> *Parker, Poe, Adams & Bernstein, L.L.P., by Matthew P. Weiner, for guardian ad litem.*
>
> *Rebekah W. Davis for respondent-appellant.*


McCULLOUGH, Judge.


Respondent-mother appeals from an order adjudicating her two sons, Clay and Casey,[1] as neglected juveniles.

On 1 March 2013, the New Hanover County Department of Social Services ("DSS") filed a petition alleging that Clay, then eight months old, and Casey, then six years old, were

---

[1]Stipulated pseudonyms to protect the children's identities and promote ease of reading.

neglected juveniles. Two months later the court conducted a hearing upon the petition and filed an order on 31 May 2013 adjudicating them as neglected.

A juvenile is neglected if he is not receiving proper care, supervision, or discipline from a parent or guardian; is not being provided necessary medical or remedial care; or is residing in an environment injurious to the juvenile's welfare. N.C. Gen. Stat. § 7B-101(15) (2011). In reviewing an order adjudicating a child as neglected, this Court determines (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the conclusions of law are supported by the findings of fact. *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000). The determination of whether a child is neglected requires the application of legal principles to a set of facts and is therefore a conclusion of law. *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675-76 (1997). Our review of a conclusion of law is *de novo*. *In re D.H.,* 177 N.C. App. 700, 703, 629 S.E.2d 920, 922 (2006). Under a *de novo* standard of review, we can consider a conclusion of law anew and freely substitute our judgment for that of the trial court. *In re A.K.D.*, ___ N.C. App. ___, ___, 745 S.E.2d 7, 8 (2013).

Respondent-mother contends the evidence and findings of fact do not support the court's conclusion of law that the children are neglected juveniles. She cites evidence and findings to support her assertion that the children are receiving proper care, supervision and discipline, obtaining proper medical or remedial care, and residing in a safe environment at the time of the filing of the petition. She argues that the children had suffered no harm and that the parents had learned how to settle their disagreements without resorting to domestic violence.

Findings of fact are binding "where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery,* 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984). Unchallenged findings of fact are also binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

The court's findings of fact show that the boys' parents have "an extensive history of unaddressed domestic violence issues" dating back to 2007 while Casey was an infant. Over the course of several years, DSS received at least six Child Protective Services reports concerning verbal and physical altercations between respondent-mother and the boys' father. In

2009, Casey was placed in the custody of his paternal grandfather due to the domestic violence between his parents. On 7 April 2010, respondent-mother reported to the police that the children's father had attempted to strangle her while he was intoxicated. The father subsequently pled guilty to assault on a female.

DSS provided referrals to alcohol abuse treatment services and domestic violence offender/empowerment services. Respondent-mother completed "Open Gate" an individual counseling and both parents participated in couples counseling in 2010. The counseling proved ineffective, as on 18 January 2011 DSS received a report alleging continuation of domestic violence in the household. On 24 January 2011, law enforcement officers responded to a 911 call from the parents' household related to domestic violence. On 19 July 2012, law enforcement officers responded to another dispatch to the residence of respondent-mother. Upon arriving, the law enforcement officers heard yelling and screaming. The officers entered and found the residence in disarray. They observed a table was flipped over and shattered glass was on the floor. The children's father had cuts and scratches about his face and arms.

Despite all of these reports and calls to law enforcement officers, the parents continued to deny the existence of a domestic violence problem. The children's father has never enrolled in the Domestic Violence Offender's Program. He has continued to abuse alcohol, prompting respondent-mother to contact DSS on 9 January 2013 regarding her concerns about his drinking and to seek substance abuse treatment for him.

Respondent-mother does not dispute that the incidents of domestic violence occurred but she argues that her testimony shows one or more of the incidents described as happening in 2010 actually happened in 2009 while Casey was in the kinship placement. She also testified that the charge of assault on a female to which the father pled guilty arose out of an incident in 2009, not the attempted strangulation incident which occurred in April of 2010 and resulted in no criminal charge against the father. She also submits that although law enforcement was called to the residence, there were no physical altercations, only verbal arguments, after 2010.

Other evidence, however, contradicts respondent-mother's minimizing of the domestic discord and supports the court's findings. Social Worker Murray, who worked on the case from 18 January 2011 until 9 March 2011, testified that she explained to

the father that verbal arguments constitute domestic violence, and that exposure to verbal arguments is threatening and frightful to a child regardless of whether the parents resort to physical violence. Regardless, the evidence shows the parents did engage in physical violence. The parents do not dispute that when the police came to the residence in July 2012, respondent-mother had turned over a table on the father. Social Worker Best, who took over the case in August 2012 shortly after that episode, testified that on more than one occasion, the father had been charged with assault on a female for assaulting respondent-mother. Social Worker Best also testified that the parents refused to acknowledge the existence of a domestic violence problem and to seek help for it and that the father refused to enroll in a substance abuse treatment program. The father did not enroll in any kind of substance abuse treatment program until after this petition was filed. Whether a certain incident happened in 2009 instead of 2010 is insignificant as the key fact is that the incident of domestic violence happened.

We conclude the evidence supports the court's ultimate finding of fact that respondents are unable to provide the children with a safe environment, and that these findings of

fact support the court's conclusion of law that the juveniles are neglected. We affirm the order.

Affirmed.

Judges MCGEE and DILLON concur.

Report per Rule 30(e).