HUNTER, JR., Robert N., Judge.
Respondent, the mother of R.D. ("Ray") and M.D. ("Mac")[1] , appeals from an order adjudicating Ray as an abused and neglected juvenile and Mac as a neglected juvenile. For the following reasons, we affirm.
I. Factual and Procedural Background
On 1 January 2016, the Henderson County Department of Social Services filed petitions alleging Ray to be an abused and neglected juvenile and Mac to be a neglected juvenile. The petitions alleged the following facts:
Respondent and her husband are the mother and father of Mac, born 10 August 2014, and Ray, born 19 October 2015. On 30 November 2015, Respondent and father brought Ray to a regularly scheduled pediatrician appointment. The parents were concerned about Ray's fussiness and his swollen leg. The pediatrician examined Ray and sent Ray to Mission Hospital for further examination. Upon further examination, doctors at Mission Hospital discovered Ray suffered from a transverse fracture in his right tibia.
Ray returned to Mission Hospital for a follow-up appointment on 10 December 2015. At this follow-up appointment, a doctor discovered Ray also suffered from four rib fractures on the right side of his body and a metaphyseal fracture of the left femur.
Respondent and father claimed they were unaware of any injuries, beyond the swelling on the right leg, until the doctor's discovery. Respondent and father reported that prior to the pediatrician visit on 30 November 2015, Ray was fussy and they tried to treat him with peroxide drops for Ray's ears, gas drops, and by consoling Ray.
DSS learned that on or about 28 November 2015, father was alone with Ray while Respondent went to the store. Ray woke up "fussy" and refused the bottle. Father called Respondent and told Respondent she needed to come home. Respondent returned home and nursed Ray.
Both parents denied any knowledge regarding the source of Ray's injuries. Respondent mentioned several people held Ray during Thanksgiving, but noted Ray did not cry during any of those encounters. Respondent also speculated that Ray's injuries may have been caused by Respondent's nine year-old sister, who accidentally fell on Ray. However, the petitions alleged:
[i]t is unlikely that a 9-year old is able to generate enough force when holding an infant by [the] rib cage to fracture the ribs. The scenario given by the 9-year old does not describe the mechanism of action for the femur fracture of the juvenile's sibling. The number and location of fractures present are consistent with physical abuse of [Ray/Mac's sibling].
Mac's petition further alleged "[t]he juvenile lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home."
On 29 January 2016, DSS filed supplemental juvenile petitions alleging a second review of Ray's medical records "identified a total of 4 rib fractures, and a possible wrist fracture, along with the previously identified fractures and injuries" and "[b]ased on the age of the fractures, there were at least 2 different incidents where injuries occurred." That same day, DSS took Ray and Mac into non-secure custody and placed the children with their maternal great-aunt and uncle.
The Henderson County District Court held adjudication hearings on 25 February and 10 March 2016. At the hearings, a records custodian from Mission Hospital, two experts in the field of child abuse, and Respondent testified.
First, DSS called Karen Fessler, a records custodian for Mission Hospital. Based upon Ms. Fessler's testimony, Ray's and Mac's medical records were admitted into evidence.
Next, DSS called Barbara Williams, a Physician's Assistant at Mission Children's Specialists. The trial court tendered Williams as an expert in the field of child abuse. On 10 December 2015, Williams evaluated both Ray and Mac at Mission Hospital. Williams testified it is "very, very difficult to break [ribs] because they are a ring system and it's a stabilizing part of [the] body to protect ... our lungs." Williams also testified Ray was not mobile at the time of his injuries. Respondent told Williams that Respondent first noticed Ray's swollen leg when Respondent's sister alerted her to the issue. Respondent first thought a bug bite caused the swelling, but Respondent did not see a bug bite on Ray.
However, Williams testified Respondent's account did not accurately explain how Ray was injured. Notably, Williams testified a "good bit" of force is required to break the tibia. Williams opined that Ray's injuries were not of an accidental nature and were a result of child abuse. On cross examination, Williams opined a child falling on Ray "could potentially explain" the tibia fracture, but not the other injuries.
DSS next called Dr. Cynthia Brown, the medical director of the child safety team at Mission Children's Hospital. The trial court tendered Dr. Brown as an expert in the field of child abuse. Dr. Brown examined Ray on 1 December 2015. Respondent gave several explanations for Ray's injuries to Dr. Brown, but Dr. Brown testified none of the explanations were sufficient to explain the tibia fracture. Dr. Brown opined the injuries were not of an accidental nature and were "the kinds of factures [seen] more commonly in inflicted injury." Dr. Brown also opined Ray suffered from abuse.
Respondent also testified. Respondent did not have an explanation for Ray's injuries but did testify as to a possible explanation. On Thanksgiving, the family went to a friend's house, and Ray was held by several people. Two days later, Respondent's sister told Respondent to look at Ray's leg, which was swollen.
DSS tried to call the father, who was in court on 25 February 2016 and the morning of 10 March 2016. However, after a break, the father did not return and did not testify at the hearings.
The trial court found Ray was an abused and neglected child, and Mac was a neglected child. The trial court then received evidence regarding disposition. After hearing testimony from Leah McClain, the foster care social worker for Ray and Mac, the trial court found it was in the children's best interest to remain in the custody of DSS. Respondent filed timely notice of appeal on 20 April 2016.[2]
II. Standard of Review
We review a trial court's adjudication of neglect "to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." In re T.H.T., 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007), aff'd as modified, 362 N.C. 446, 665 S.E.2d 54 (2008) (internal quotation marks omitted). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." Id . at 343, 648 S.E.2d at 523 (citation omitted). Unchallenged findings of fact are deemed supported by sufficient evidence and are binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citations omitted). "The trial court's conclusions of law are reviewable de novo on appeal." In re D.H., 177 N.C. App. 700, 703, 629 S.E.2d 920, 922 (2006) (citation and internal quotation marks omitted).
III. Analysis
Respondent does not contest the trial court's adjudication of Ray as an abused and neglected juvenile. Respondent's only argument is the trial court erred in adjudicating Mac as a neglected juvenile based solely on the physical injuries of Ray. Respondent contends that Mac did not face a substantial risk of neglect because he was not an infant and Respondent showed that Mac would be protected from harm. We disagree.
North Carolina General Statute section 7B-101(15) (2016) defines a neglected juvenile as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (emphasis added).
The statute does not mandate a conclusion that a child is neglected when another child in the home has been abused or neglected, but allows the trial court discretion to determine the weight to be given such evidence. In re A.S. , 190 N.C. App. 679, 690, 661 S.E.2d 313, 320 (2008), aff'd per curiam , 363 N.C. 254, 675 S.E.2d 361 (2009) (citation omitted). In determining whether a child is neglected based on the abuse or neglect of another child in the home, the trial court must determine whether there is a substantial risk of future neglect of a child in that home based on the historical facts of the case. In re D.B.J. , 197 N.C. App. 752, 755, 678 S.E.2d 778, 780 (2009) (citation omitted).
However, "[i]t is well-established that the trial court need not wait for actual harm to occur to the child if there is a substantial risk of harm to the child in the home." Id . at 755, 678 S.E.2d at 780 (citation and internal quotation marks omitted). "[T]he determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984).
This Court has affirmed adjudications of neglect where another child in the home was abused and the parents fail to take responsibility for that child's injuries. See e.g. , In re A.S. , 190 N.C. App. at 690-91, 661 S.E.2d at 320-21 (affirming an adjudication of neglect of a child where the mother intentionally burned another child's foot and falsely claimed the burning was accidental); In re N.G. , 186 N.C. App. 1, 8-10, 650 S.E.2d 45, 50-51 (2007) (affirming adjudication of neglect where the respondents' parental rights to another child were terminated and respondents failed to acknowledge culpability for that child's injuries); In re P.M. , 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005) (affirming adjudication of neglect of one child based on prior adjudication of neglect with respect to other children and parent's lack of acceptance of responsibility). However, an adjudication of neglect will not be upheld when the child is not at risk of the same "type of abuse" suffered by another child. See In re Nicholson , 114 N.C. App. 91, 93-94, 440 S.E.2d 852, 853-54 (1994).
Respondent does not challenge any of the trial court's findings of fact, and, thus, they are binding on appeal. Accordingly, our review is limited to determining whether the findings of fact support the trial court's conclusion of law that Mac is a neglected juvenile.
The trial court made the following relevant findings of fact:
6. The juveniles were residing with parents [Respondent] and [father] prior to coming into the custody of [DSS]. Also residing in the home was the maternal great grandfather.
7. The juveniles were under the sole supervision and responsibility of the respondent parents since no later than [Ray's] birth on 19 October 2015.
8. The juveniles have always resided in the same home together and were under the same supervision and care.
...
11. The juvenile [Ray] had transverse tibia fracture.
12. The juvenile [Ray] had metaphyseal fracture in the left femur.
13. The juvenile [Ray] also had four rib fractures.
14. Based on the location of the fractures on the bones and in the juvenile, the types of breaks and the number of injuries, within a reasonable degree of medical certainty these injuries occurred from child abuse.
15. Furthermore, the age and immobility of the juvenile [Ray] and the failure by the parents to provide an explanation for the injuries, support the conclusion of child abuse with a reasonable degree of medical certainty.
...
24. Based on a reasonable degree of medical certainty, [Ray] is an abused juvenile because no satisfactory explanation was provided by the mother that matches the mechanism causing the fractures and these injuries were inflicted and non-accidental.
...
26. These injuries are serious in nature and neither parent has provided a reasonable explanation for how these fractures occurred.
27. The parents alleged that the injuries occurred when a 9 year old relative fell on the juvenile [Ray]. A fall of this kind by a 9 year old could not create the force necessary to create these fractures and is inconsistent with the location and the types of breaks.
28. Based on the location, type, and number of fractures, these injuries to the juvenile [Ray] are non-accidental in nature and is consistent with child abuse.
29. At the time of the abuse to the juvenile [Ray], the juvenile [Mac] lived in the same home and under the same supervision and care as his brother.
30. That the [c]ourt finds that [the] conditions which led to the removal of the juveniles from the juvenile[s'] home exist.
Here, the trial court's adjudication of neglect was based not only on the fact Ray sustained injuries, but also based on the fact Respondent failed to take responsibility for the injuries. The findings demonstrate Mac lived in an injurious environment and was at risk of physical abuse due to the serious unexplained physical abuse sustained by Ray. At just six-weeks-old, while under the sole supervision of the parents, Ray suffered at least six different fractures to both sides of his body. Neither parent could provide any reasonable explanation as to how Ray suffered such injuries. Due to the nature and number of fractures, as well as the child's age and immobility, medical experts determined the injuries were non-accidental and consistent with child abuse. At the time Ray was physically abused, Mac resided in the same home under the same supervision as Ray.
The trial court is afforded some discretion in determining the weight to be given to evidence that another child was subjected to physical abuse in the home. Before concluding Mac was a neglected juvenile, the trial court stated, "something is going on in [the] home to cause this environment to be injurious to a child in it. I've seen the effects on [Ray] and concerned [sic] about the possible effects on [Mac] and recognize that he's living in that same environment...." Here, the trial weighed such evidence and was permitted, although not required, to conclude that Mac was neglected based on evidence that Ray was physically abused. See Nicholson , 114 N.C. App. at 94, 440 S.E.2d at 854.
Respondent also contends because Mac was not an infant, he was not at risk of the same type of fractures sustained by Ray, and Mac's situation resembled that of the three-and-a-half-year-old in Nicholson . Id. at 94, 440 S.E.2d at 854. In Nicholson , we affirmed the trial court's decision to find neglect as to the six-month-old child, but to dismiss the petition as to the three-and-a-half-year-old child. Id . at 92-94, 440 S.E.2d at 853-54. The children in Nicholson were alleged to be neglected after their sibling died from blunt trauma and shaken-baby syndrome. Id. at 92, 440 S.E.2d at 852-53. In making its decision, the trial court noted "shaken-baby syndrome is most deadly to infants under six months of age" and the three-and-a-half-year-old was not at risk of that type of abuse because of her age. Id . at 92-93, 440 S.E.2d at 853.
Here, Ray's injuries were not specific to his young age, such as was the case in Nicholson with shaken-baby syndrome. The medical experts testified it would have taken significant force to cause the fractures sustained by Ray, and there is no evidence that one-and-a-half-year-old Mac is not at risk for the same abuse. Moreover, Dr. Brown testified Ray's injuries were not consistent with shaken-baby syndrome. Although Ms. Williams testified shaking could be a cause of Ray's injuries, Ms. Williams also testified the injuries could be caused by jerking, direct impact, or flinging. Further, Dr. Brown testified the injuries could have been caused by direct impact, jerking, or being thrown to the ground. Those types of abuse are not specific to Ray's age.
Because the fractures are unexplained and Respondent admits she does not know how Ray was injured while under her and the father's supervision, Respondent's claim that Mac would be protected from harm is unfounded.
In this case, the findings of fact show Mac was substantially at risk due to the unexplained physical abuse of Ray while under the parents' sole supervision, and these findings support the conclusion that Mac is a neglected juvenile. Respondent does not raise any issue on appeal as to the disposition order. Accordingly, we affirm the orders of the trial court.
IV. Conclusion
For the foregoing reasons, we affirm the trial court.
AFFIRMED.
Report per Rule 30(e).
Judges DILLON and DIETZ concur.

The parties agreed to use these pseudonyms to protect the juveniles' privacy and for ease of reading.

The father is not a party to this appeal.